# RICHARD C. LOPIANO *v.* SHELLEY LOPIANO
## (SC 15899)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued September 29—officially released December 29, 1998

Tad J. Bistor, with whom was J. Michael Cantore, Jr., for the appellant (plaintiff).

Lawrence M. Lapine, with whom were Christopher T. Coburn and, on the brief, Robert S. Bello and Thomas M. Cassone, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff, Richard C. Lopiano, appeals from the judgment of the trial court dissolving his marriage to the defendant, Shelley Lopiano, ordering a property distribution pursuant to General Statutes § 46b-81,[1] and awarding alimony and attorney's fees to the

---

[1] General Statutes § 46b-81 provides: "Assignment of property and transfer of title. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources

defendant pursuant to General Statutes §§ 46b-82 and 46b-62.[2] The issues to be decided on appeal are whether the trial court: (1) properly determined that a personal injury award obtained by the plaintiff was available, in its entirety, for equitable distribution pursuant to § 46b-81; (2) properly determined that the defendant should receive a percentage of that award; (3) abused its discretion in awarding alimony and attorney's fees to the

of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[2] General Statutes § 46b-82 provides: "Alimony. At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

General Statutes § 46b-62 provides: "Orders for payment of attorney's fees in certain actions. In any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 46b-204, 47-14g, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney or may order the payment of the attorney's fees in whole or in part from the estate of the child. If the child is receiving or has received state aid or care, the reasonable compensation of the attorney shall be established by, and paid from funds appropriated to, the Judicial Department."

defendant; and (4) abused its discretion in refusing to allow into evidence letters from the plaintiff's treating psychologist and psychiatrist articulating the plaintiff's psychological disabilities. Following the trial court's judgment, the plaintiff appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 65-1, formerly § 4023, and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The trial court reasonably could have found the following relevant facts. The parties were married on May 6, 1967, in Stamford, when the plaintiff was a member of the United States Marine Corps and the defendant was working as a secretary. The plaintiff served in Vietnam, participating in extensive engagements with the enemy and earning several decorations. He returned as a result of war wounds and was discharged several months later. The parties initially lived with the defendant's parents for six months before moving to their own apartment. They had two daughters, both of whom were adults at the time of the dissolution. While in the Marine Corps, the plaintiff obtained his high school diploma. Following his discharge from the service, he began employment with Polycast, where he worked for four years, and then, with a loan from the Veterans' Administration, started his own business, Excel Tree Service.

Beginning in 1977, the plaintiff began to drink heavily and to pay less attention to the business, while the defendant remained an integral part of the business, maintaining records, making appointments, billing customers and organizing the work crew. In 1981, the plaintiff first brought an action to dissolve the marriage, but thereafter the parties reconciled. They sold the business and their home and moved to Pennsylvania, where the plaintiff worked as a tree surgeon and the defendant worked part-time. After six months, the plaintiff

returned to Connecticut and resumed a liaison with another woman with whom he had had an affair prior to his move to Pennsylvania. By this time, the plaintiff was using cocaine as well as alcohol.

Later that same year the plaintiff was diagnosed as having chronic posttraumatic stress disorder resulting from his military service. He was found to be 100 percent disabled and entitled to a Veterans' Administration award. Although separated from his wife and daughters, when in need of patient care, the plaintiff would return to his family and contribute to his family's support when asked. His work record and his behavior were erratic, and he was arrested on several occasions, three times for assaultive behavior and one time for conspiracy to sell cocaine. The plaintiff was placed on probation for the drug offense. He received in-patient care at a veterans' hospital in Pennsylvania and thereafter went through a rehabilitation program for eight months.

When the plaintiff returned to the workforce, he began construction work in New York. Unfortunately, in February, 1992, while at work, he sustained severe physical injuries causing him to be 100 percent physically disabled. He pursued a negligence action in New York, which, in 1996, resulted in the following jury award: $750,000 for past pain and suffering; $1,600,000 for future pain and suffering over the next twenty-nine years; $80,000 for past loss of earnings; $375,000 for future loss of earnings; and $15,000 for past medical expenses; totaling $2,820,000. This sum was reduced by $423,000 based upon a finding that the plaintiff was 15 percent negligent, leaving a net jury award of $2,397,000. The trial judge in the negligence action reduced the awards for pain and suffering, and made the following allocations: $150,000 for past pain and suffering; $400,000 for future pain and suffering; $75,000 for past loss of wages; and $175,000 for future loss of wages; leaving the plaintiff an award totaling $800,000.

Because the plaintiff did not agree to these reduced amounts, he appealed the matter.

Following the accident, the defendant continued to be supportive, helping the plaintiff to relocate to a hospital near her so that she could visit him on a daily basis. As remarked upon by the trial court, "[t]o her credit she was tolerant of her husband's behavior throughout the marriage and its ensuing separation. On many occasions the plaintiff sought and the defendant always gave her help and support whether the difficulty was medical, psychological or involvement with the law. . . . The defendant never gave up hope for the marriage until the present action was started." The trial court rejected the plaintiff's assertions that the marriage had effectively ended fifteen years earlier, concluding that the parties were in a dysfunctional, bad, unhappy marriage in which the plaintiff continued to seek, and the defendant continued to provide, help and support.

Finally, the trial court found that the defendant is in good health with steady employment as a medical office secretary, earning $581 gross and $466 net weekly. She also has a slip and fall action pending, which the trial court deemed to be of uncertain value. As a consequence of his physical and psychological impairments, the plaintiff receives Social Security disability insurance of $679 monthly, veteran's disability benefits of $2038 monthly and workers' compensation benefits of $1400 monthly, totaling $957.44 weekly. The trial court determined that the plaintiff's personal injury award was property subject to equitable distribution and issued the following financial orders: (1) the plaintiff must pay to the defendant $100 weekly as periodic alimony until the defendant's remarriage, the death of either party, further court order or upon her receiving her share of the plaintiff's judgment or award from his personal injury action; (2) the plaintiff must pay to the defendant 25 percent of the net recovery received by the plaintiff

by judgment or settlement of that action; and (3) when the plaintiff receives his net recovery, he shall pay to the defendant's attorney the sum of $10,000 as an allowance to defend this dissolution action.

I

The plaintiff makes three claims in connection with the trial court's distribution to the defendant of a percentage of his personal injury award. Specifically, he claims that the trial court should not have included as property subject to dissolution under § 46b-81 the portion of his personal injury award received as compensation for pain and suffering on the basis that such payments are compensation for personal losses. He next claims that the trial court improperly included as property the portion of his personal injury award received as compensation for postdissolution lost wages. Finally, he claims that the inclusion by the trial court of both of these items violated his rights to equal protection under article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments.[3] In essence, the plaintiff argues that only the portion of his personal injury award compensating him for his lost wages and medical expenses incurred during the period of the marriage was properly included in the marital estate. We disagree.[4]

---

[3] The equal protection clause of the state constitution provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Conn. Const., amend. XXI.

[4] At oral argument before this court, the plaintiff informed the court, as well as the defendant for the first time, that the case in New York had been settled. The settlement did not specify that any particular amount had been designated as compensation for economic and noneconomic damages or for past and future damages. Therefore, at first blush, the plaintiff's claim that the trial court improperly awarded the defendant a percentage of the portion of his personal injury award received as compensation for pain and suffering and a percentage of the portion of his personal injury award received as compensation for postdissolution lost wages is moot. See *In re*

As a preliminary matter, we note that this court has not previously considered whether, at the time of a dissolution, a personal injury award is a property interest encompassed within the meaning of "property" under § 46b-81. Whether the jury award in the plaintiff's personal injury action was properly characterized as property available for distribution to the plaintiff under § 46b-81 is a matter of statutory interpretation, which is a matter of law, requiring plenary review. See *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

In interpreting statutes, our analysis is guided by well established principles of statutory construction. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 663, 680 A.2d 242 (1996).

"The distribution of assets in a dissolution action is governed by § 46b-81, which provides in pertinent part that a trial court may 'assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of *the property*, if any,

*Romance M.*, 229 Conn. 345, 357, 641 A.2d 378 (1994) ("[w]hen, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot"). The plaintiff argued, however, that, when a damage award has not been apportioned, the trial court in a dissolution action nevertheless has the responsibility to segregate the various components of such an award or settlement. Therefore, this court still has jurisdiction to decide this case because, if the plaintiff is correct that only certain portions of the award are subject to distribution, there is relief that can be afforded him.

to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.' . . . This approach to property division is commonly referred to as an 'all-property' equitable distribution scheme. See 3 Family Law and Practice (A. Rutkin ed., 1995) § 37.01 [2] [a] [v], p. 37-19. [Section 46b-81] does not limit, either by timing or method of acquisition or by source of funds, the property subject to a trial court's broad allocative power. A. Rutkin, E. Effron & K. Hogan, 7 Connecticut Practice Series: Family Law and Practice with Forms (1991) § 27.1, pp. 398–400." (Emphasis in original.) *Krafick* v. *Krafick*, 234 Conn. 783, 792, 663 A.2d 365 (1995).

"There are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." Id., 792–93. It is the first part of this analysis that is of paramount importance in this case.

Neither § 46b-81 nor any other closely related statute defines property or identifies the types of property interests that are subject to equitable distribution in dissolution proceedings. When a statute does not define a term, we look to the common understanding expressed in the law and in dictionaries. See General Statutes § 1-1

(a); *State* v. *Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994).

Black's Law Dictionary (6th Ed. 1990) defines property as the term "commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments . . . ." The term has been defined elsewhere in the General Statutes. See General Statutes § 52-278a (e) (for purposes of attachment, property means "any present or future interest in real or personal property, goods, chattels or *choses in action*" [emphasis added]). Rather than narrow the plain meaning of the term "property" from its ordinarily comprehensive scope, in enacting § 46b-81, "the legislature acted to expand the range of resources subject to the trial court's power of division, and did not intend that property should be given a narrow construction." *Bornemann* v. *Bornemann*, 245 Conn. 508, 515–16, 752 A.2d 978 (1998).

Recent decisions from this court have indeed empowered trial courts to deal broadly with property and its equitable division incident to dissolution proceedings. In concluding in *Krafick* that the vested pension benefits at issue were property subject to distribution under § 46b-81, we reasoned that a broad definition of property is consistent with the purpose of § 46b-81 of recognizing that "marriage is, among other things, a shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute—directly and indirectly, financially and nonfinancially—the fruits of which are distributable at divorce." (Internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 234 Conn. 795. We also acknowledged, however, that our broad

definition of property was not entirely without limitation, and that property under § 46b-81 includes only interests that are presently existing, as opposed to mere expectancies. *Rubin* v. *Rubin*, 204 Conn. 224, 230–31, 527 A.2d 1184 (1987). Following an analysis of the pension benefits at issue in *Krafick* to determine whether the contingency to which the benefits were subject rendered them a mere expectancy, we determined that the pension benefits represented a presently existing interest because they created in their holder an enforceable contract right, and such a right represents more than a mere expectancy. *Krafick* v. *Krafick*, supra, 797–98.

Thereafter, in *Simmons* v. *Simmons*, 244 Conn. 158, 165, 708 A.2d 949 (1998), we concluded that a medical degree earned by one spouse during a marriage is not property subject to distribution within the meaning of § 46b-81 because the medical degree entailed no presently existing, enforceable right to receive income in the future but, rather, represented only an opportunity for the degree holder to earn future income.

Employing the same type of analysis thereafter in *Bornemann* v. *Bornemann*, supra, 245 Conn. 517–18, we concluded that stock options are analogous to pension benefits in that they bestow a right upon the holder to receive a promised benefit under prescribed conditions. "[M]uch like the right of a pension beneficiary to collect a pension once the particular conditions under which the pension was offered have been satisfied— typically, the attainment of a prescribed age and the fulfillment of a required number of years of service for the employer—the holder of a stock option possesses the right to accept, under certain conditions and within a prescribed time period, the employer's offer to sell its stock at a predetermined price. . . . Should the employer attempt to withdraw the offer, the employee has a chose in action in contract against the employer.

. . . Conversely, [t]he defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence." (Citations omitted; internal quotation marks omitted.) Id., 517. Therefore, although the stock options at issue in that case had not yet "matured" or "vested" at the time of the dissolution, the options created an enforceable right in the defendant husband, which we held to be a presently existing, contractual interest in property that is encompassed within the broad definition of property under § 46b-81. Id., 517–18.[5]

In the present case, the plaintiff recognizes that the judgment in his personal injury case clearly connotes a presently existing property interest in a specific award within the ambit of § 46b-81. See *Rubin* v. *Rubin*, supra, 204 Conn. 230–31. He argues, however, that this characterization is merely the first step in the analysis in deciding *whether* and *how* to apportion the award.[6]

---

[5] As Justice Berdon points out in his dissent, the court in *Bornemann* went on to examine when the asset was earned in order to determine whether it constituted marital property under § 46b-81. Examining what an asset is intended to reflect is significant, however, only as it relates to whether the asset was earned prior to or subsequent to the date of dissolution. A severance package including unvested stock options, as in *Bornemann*, may well be intended, in part, to replace lost future income. That fact does not, however, determine whether such options are marital property under § 46b-81. Rather, it is when those options were earned that is dispositive. *Bornemann* v. *Bornemann*, supra, 245 Conn. 525–28. Therefore, although some portion of the personal injury award in the present case represents lost future wages, and, for that matter, future pain and suffering, that fact does not preclude this court from characterizing the award, in its entirety, as marital property.

Moreover, the dissent's reliance on *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990), is misplaced. Had the plaintiff in this case received the personal injury award and invested the money in a long term investment such as a certificate of deposit, which did not mature until after the date of dissolution, *Sunbury* dictates that, absent "an exceptional intervening circumstance," the defendant would not be entitled to "postdecree appreciation"; id.; that is, any interest on the money that was earned after the date of dissolution. Unlike *Sunbury*, this case does not involve an increase in the value of property following the dissolution.

[6] The plaintiff argues that his personal injury cause of action had not accrued prior to the parties' separation. As this court held in *Sunbury* v.

There are marked differences in the treatment of proceeds from personal injury recoveries among the various jurisdictions. See 24 Am. Jur. 2d, Divorce and Separation § 913 (1983). For purposes of distribution in a dissolution proceeding, there are three approaches to classifying personal injury awards or settlements. The first approach is to classify any such award or settlement as the personal and entirely separate property of the injured spouse. See, e.g., *In the Matter of the Marriage of Bull*, 48 Or. App. 565, 567–68, 617 P.2d 317 (1980); *Izatt* v. *Izatt*, 627 P.2d 49, 51 (Utah 1981).

The second approach, the analytic approach, requires an evaluation of the purpose of the compensation in the determination of the character of the award or settlement as "marital" or "personal" property. Under this approach, pain and suffering is personal, compensation for lost wages and medical expenses incurred during the course of the marriage is marital, while compensation for future economic losses is deemed nonmarital. See, e.g., *Weisfeld* v. *Weisfeld*, 545 So. 2d 1341, 1345 (Fla. 1989) (part of personal injury award that is marital property subject to distribution includes amount awarded for lost wages or lost earning capacity during marriage, medical expenses paid from marital funds during marriage, and any other funds for which no allocation can be made). This approach of distinguishing between the economic and noneconomic components of a personal injury award is the overwhelming method of classification in community property states. It has also been applied in a number of equitable distribution

*Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990), under § 46b-81, the date of dissolution is the appropriate date on which to determine and value assets. See *Bornemann* v. *Bornemann*, supra, 245 Conn. 521 (*"Sunbury* requires that in dissolution proceedings, the court must determine whether an asset was earned prior to or subsequent to the date of dissolution in order to determine whether the asset is marital property"). Therefore, the fact that the parties were separated for a great deal of their marriage does not impact any decision as to the characterization of the asset.

states. See, e.g., *Lundquist* v. *Lundquist*, 923 P.2d 42 (Alaska 1996) (compensatory damage payments); *Weisfeld* v. *Weisfeld*, supra, 1341 (workers' compensation benefits); *Campbell* v. *Campbell*, 255 Ga. 461, 339 S.E.2d 591 (1986) (personal injury settlement); *Ward* v. *Ward*, 453 N.W.2d 729 (Minn. App. 1990) (same); *Mistler* v. *Mistler*, 816 S.W.2d 241 (Mo. App. 1991) (same); *In re Marriage of Blankenship*, 210 Mont. 31, 682 P.2d 1354 (1984) (workers' compensation benefits); *Landwehr* v. *Landwehr*, 111 N.J. 491, 545 A.2d 738 (1988) (personal injury damages); *Rich* v. *Rich*, 126 Misc. 2d 536, 483 N.Y.S.2d 150 (1984) (same); *Johnson* v. *Johnson*, 317 N.C. 437, 346 S.E.2d 430 (1986) (same); *Crocker* v. *Crocker*, 824 P.2d 1117 (Okla. 1991) (workers' compensation benefits); *Kirk* v. *Kirk*, 577 A.2d 976 (R.I. 1990) (personal injury damages and workers' compensation benefits); *Hardy* v. *Hardy*, 197 W. Va. 243, 475 S.E.2d 335 (1996) (personal injury damages). "However, the analytic approach is the acknowledged minority rule in such [equitable distribution] states. *Johnson* v. *Johnson*, [supra, 450–51]." *Boyce* v. *Boyce*, 541 A.2d 614, 617 n.9 (D.C. App. 1988).[7]

The third approach, and the more modern trend, is the literal or mechanistic approach, which provides that, regardless of the underlying purpose of the award or

---

[7] It is noteworthy that not all successful personal injury claims result in an award by a fact finder that has been allocated into specific categories. Quite frequently, cases are resolved by a settlement that does not clearly designate the amount of past and future economic and noneconomic damages the settlement was intended to replace. Some portion of the settlement could be intended to replace future wages that the injured person would have earned had he not been disabled while other portions could be traceable to loss or injury to the body. Another portion could be intended to compensate the injured spouse for past medical expenses or wages, while still another portion could have been based upon past pain and suffering. The inability to ascertain clearly the specific breakdown of a settlement requires trial courts following the analytic approach in the course of a dissolution action to engage in a separate fact-finding inquiry in order to properly apportion that settlement.

the loss it is meant to replace, if the award or settlement was acquired during the marriage, it is deemed to be marital property. See, e.g., *In re Marriage of Fjeldheim*, 676 P.2d 1234 (Colo. App. 1983); *Boyce* v. *Boyce*, supra, 541 A.2d 614; *In re Marriage of Burt*, 144 Ill. App. 3d 177, 494 N.E.2d 868 (1986); *In re Marriage of McNerney*, 417 N.W.2d 205 (Iowa 1987); *In the Matter of the Marriage of Powell*, 13 Kan. App. 2d 174, 766 P.2d 827 (1988), cert. denied, 244 Kan. 737 (1989); *Dalessio* v. *Dalessio*, 409 Mass. 821, 570 N.E.2d 139 (1991), aff'd, 413 Mass. 1007, 604 N.E.2d 676 (1992); *Heilman* v. *Heilman*, 95 Mich. App. 728, 291 N.W.2d 183 (1980); *Maricle* v. *Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985); *Platek* v. *Platek*, 309 Pa. Super. 16, 454 A.2d 1059 (1982); *Bero* v. *Bero*, 134 Vt. 533, 367 A.2d 165 (1976).

None of these approaches mirrors exactly how courts in this state view their authority in dissolution proceedings. In Connecticut, the trial court's authority to reach a party's right of action arises from the fact that such a right may be characterized as *property*. Characterization of the right of action as personal, or characterization of what the recovery was intended to address as personal, does not affect the divisibility of the settlement or award in dissolution proceedings because the trial court retains the authority to distribute both jointly held and individually held property. See *Connolly* v. *Connolly*, 191 Conn. 468, 476, 464 A.2d 837 (1983). Although it is not improper for the trial court to consider the actual source or ownership of an asset, these are but two factors to be considered in reaching an equitable division in dissolution proceedings. The fact that a particular asset belongs to one spouse may cause the trial court to be predisposed to awarding it to its named owner; however, if the marital estate is otherwise insufficient to maintain the other spouse, the court must be able to exercise its discretion in arriving at an equitable distribution, taking into consideration the needs and

assets of both parties. The failure to interpret property broadly pursuant to § 46b-81 could result in substantial inequity where, for example, a spouse who recovers a substantial amount in a personal injury action is left with income-producing assets, bought solely with money from the award, and the uninjured spouse is left destitute. Such a result clearly would be contrary to the purposes of § 46b-81 and would not be in keeping with the equitable nature of dissolution proceedings under that section.

Unlike provisions in effect in many other jurisdictions that limit distributions to property based upon how and when it was acquired, § 46b-81 does not draw such distinctions. *Krafick* v. *Krafick*, supra, 234 Conn. 792. In our view, the legislative decision to recognize all forms of presently existing interests as property subject to distribution at the time of dissolution is well considered. Therefore, while the plaintiff's award for his pain and suffering was undeniably his personal property, it was nevertheless subject to the court's authority for purposes of this dissolution action. We do not decide that the award in this case *must* have been divided, only that it was the trial court's function to weigh the factors relevant to the needs of the parties and the circumstances of the case in order to determine what portion, if any, of the award should be distributed to the defendant.[8]

---

[8] We recognize that this case does not raise, and therefore, we do not answer, the question of whether an inchoate personal injury claim (one that is not a present interest, but which *may* ripen) is property under § 46b-81. Contrast *Amato* v. *Amato*, 180 N.J. Super. 210, 434 A.2d 639 (App. Div. 1981) (wife's inchoate right to sue for medical malpractice not subject to distribution) with *Boyce* v. *Boyce*, supra, 541 A.2d 614 (spouse's inchoate personal injury claim, which arose after separation of parties but before divorce, was marital property subject to equitable distribution of court). We note that the majority of courts in equitable distribution states, in rejecting the analytic approach, have held that even with regard to an inchoate claim, the entirety of the claim is subject to allocation. These courts have appreciated that the trial court, faced with distributing a property interest of

Finally, we reject the plaintiff's claim, raised for the first time on appeal, that by including as property that part of his personal injury award representing compensation for his postdissolution earnings and compensation for his pain and suffering, the trial court violated his rights to equal protection under the state constitution. See footnote 3 of this opinion. In essence, the plaintiff argues that it is only because he is disabled that the money from his personal injury action has been made available. This claim requires little attention.[9]

We note that the plaintiff failed to raise this constitutional claim before the trial court. Practice Book § 60-5, formerly § 4061, provides in pertinent part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." "[Section 60-5] provides that this court is not bound to consider a claim that was not distinctly raised at trial. This rule applies to constitutional claims. *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 376, 568 A.2d 431 (1990); *Sands* v. *Sands*, 188 Conn. 98, 106, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792,

unknown value, can allocate a fixed percentage of any future recovery. See *Heilman* v. *Heilman*, supra, 95 Mich. App. 731–32; *Di Tolvo* v. *Di Tolvo*, 131 N.J. Super. 72, 82–83, 328 A.2d 625 (1974). Allowing trial courts to be resourceful has been held preferable to providing an injured spouse an incentive to postpone settlement of a personal injury action until after the dissolution. See *In re Marriage of Dettore*, 86 Ill. App. 3d 540, 540–42, 408 N.E.2d 429 (1980). As we recently stated when distinguishing between the right to receive an asset and the inability to ascertain its value, the latter is not a problem of classification, but, rather, one of valuation and distribution. *Krafick* v. *Krafick*, supra, 234 Conn. 797–98 n.21. Nevertheless, we leave for another day the issue of whether an inchoate personal injury claim is property under § 46b-81.

[9] Because we fail to see how the plaintiff's equal protection rights have been encroached upon due to his disability, we do not apply the strict scrutiny analysis required by *Daly* v. *DelPonte*, 225 Conn. 499, 513–14, 624 A.2d 876 (1993).

74 L. Ed. 2d 997 (1983). [O]nly in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. *Roche* v. *Fairfield*, 186 Conn. 490, 505, 442 A.2d 911 (1982). Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of public welfare or of justice between the parties. . . . *Statewide Grievance Committee* v. *Friedland*, 222 Conn. 131, 147, 609 A.2d 645 (1992)." (Internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 828–29, 614 A.2d 414 (1992).

The plaintiff has not claimed nor has he pointed us to any such exceptional circumstances in the present case. Indeed, he cannot, for not all persons with pending personal injury claims, including those who seek compensation for pain and suffering and future lost wages, are disabled. In light of our recent decisions that presently existing interests, which create an enforceable right, constitute property within the broad definition of property under § 46b-81, regardless of the method of acquisition or source; see, e.g., *Bornemann* v. *Bornemann*, supra, 245 Conn. 517; *Krafick* v. *Krafick*, supra, 234 Conn. 797–98; we fail to see how, as a consequence of the trial court's treatment of the plaintiff's personal injury award, a disabled person is treated any differently than a nondisabled person.

## II

The plaintiff next claims that because he is 100 percent physically and mentally disabled, the trial court improperly: (a) awarded the defendant 25 percent of the net proceeds of his personal injury award; (b)

awarded the defendant periodic alimony; and (c) ordered him to pay the defendant's legal fees. We are not persuaded.

## A

We treat the first and second claims together because the criteria for the assignment of property pursuant to § 46b-81 (c); see footnote 1 of this opinion; and the ordering of alimony pursuant to General Statutes § 46b-82; see footnote 2 of this opinion; are virtually identical. *Sunbury* v. *Sunbury*, 210 Conn. 170, 173–74, 553 A.2d 612 (1989). "While an action for divorce or dissolution of marriage is a creature of statute, it is essentially equitable in its nature. *Stoner* v. *Stoner*, 163 Conn. 345, 356, 307 A.2d 146 [1972]." *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 584, 362 A.2d 835 (1975). "The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute, i.e., where the sole asset of the parties is their residence to which both have contributed. Equity certainly does not contemplate such a result." Id., 585.

"While the trial court must consider the delineated statutory criteria [when allocating property], no single criterion is preferred over the others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. *Valante* v. *Valante*, 180 Conn. 528, 531, 429 A.2d 964 (1980)." *Carpenter* v. *Carpenter*, 188 Conn. 736, 740–41, 453 A.2d 1151 (1982). In dividing up property, the court must take many factors into account. *Yontef* v. *Yontef*, 185 Conn. 275, 285–86, 440 A.2d 899 (1981). The trial court must consider all the statutory

criteria in determining how to divide the parties' property in a dissolution action. Therefore, in addition to the financial contributions of each party, the court must properly consider the causes of the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. "A trial court, however, need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 797, 621 A.2d 267 (1993).

In reviewing the trial court's decision, we are mindful that the trial court is accorded wide discretion in a dissolution action in distributing the marital property. *Rostain* v. *Rostain*, 213 Conn. 686, 689, 569 A.2d 1126 (1990). "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." Id., 693. "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." *Blake* v. *Blake*, 207 Conn. 217, 229, 541 A.2d 1201 (1988).

Against this legal background, we examine the plaintiff's claims. The trial court found that the plaintiff had been diagnosed as having " 'post traumatic stress disorder-chronic,' " related to his military service, for which he was found to be 100 percent disabled. In addition, as a result of severe physical injuries he sustained while at work on a construction site, he was 100 percent physically disabled. As a consequence of these impairments, the plaintiff receives social security disability insurance of $679 monthly, veteran's disability benefits

of $2038 monthly, and workers' compensation benefits of $1400 monthly, totaling $957.44 weekly.[10] The court further found that the defendant was in good health and that she had been steadily employed as a medical office secretary, earning $581 gross and $466 net weekly. Additionally, the trial court considered the plaintiff's personal injury award of $2,397,000, subsequently reduced to $800,000, which was then on appeal, and recognized that the cause of action was his only substantial asset. Finally, the court remarked upon the defendant's personal injury "slip and fall" action of uncertain value pending at the time of the dissolution, which it found to be her only asset.

In addition to the financial considerations, the court gave a lengthy recitation about the plaintiff's valiant service in Vietnam; the tree service business the parties started and operated for nearly ten years; the plaintiff's decline due to alcohol abuse; the defendant's ability to run the business largely without the plaintiff's contribution; the plaintiff's request for a divorce followed by a reconciliation; the sale of the tree service business and their home; the plaintiff's extramarital liaisons; the plaintiff's drug abuse and criminal involvement; his psychological setbacks; the separation of the parties; the plaintiff's erratic work history and the sporadic support of his children; the defendant's attempts to help the plaintiff with his medical, psychological and criminal

---

[10] The plaintiff in his brief contends that, "upon receipt of a final decision in the [personal injury] action, the workers' compensation benefits will cease." He cites to no authority for this proposition, nor does he cite to any New York statute to substantiate this claim. (See General Statutes § 31-293 (a), which provides in pertinent part: "The rendition of a judgment in favor of the employee or the employer against the [third] party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee. . . .") Even if we assume that the plaintiff is correct, he will continue to receive more than $2700 net monthly, still more than the amount the defendant will be taking home on a monthly basis.

problems; her tolerance of his behavior throughout the marriage and the ensuing separation; and the defendant's continual hope for a reconciliation until the present action was begun. The trial court concluded by acknowledging that it had "reviewed the evidence in light of the statutory criteria of §§ 46b-81 and 46b-82, as well as applicable case law . . . ."

In this case, the court's opinion expressly demonstrates that the court considered the statutory criteria when it awarded the defendant $100 weekly as periodic alimony until such time as she remarried, either party died or she received 25 percent of the net recovery received by the plaintiff by judgment or settlement of his personal injury action. The record contains references to the breakdown of the marriage, the plaintiff's health issues, the employability of the parties, the amount and sources of their respective incomes, and finally, the estates and needs of each of the parties. All financial orders were clearly fashioned as an integrated whole. We conclude that the award of alimony terminating upon the receipt of 25 percent of the parties' only asset did not constitute an abuse of the trial court's discretion.

B

The plaintiff also claims that the trial court improperly awarded the defendant attorney's fees of $10,000, to be paid when the plaintiff receives his net recovery from his personal injury action. He contends that the award was improper because the defendant is in a better position to pay her attorney's fees and this order could be "the straw that broke the camel's back."

General Statutes § 46b-62 governs the award of attorney's fees in dissolution proceedings and provides in part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the

criteria set forth in section 46b-82. . . ." See footnote 2 of this opinion. In awarding counsel fees under this section, "[t]he court is not obligated to make express findings on each of these statutory criteria." *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982).

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to th[is] rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . Whether to allow counsel fees [under §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann*, supra, 245 Conn. 543.

In this case, the court ordered the plaintiff to pay $10,000 toward the defendant's attorney's fees, which, according to the defendant's financial affidavit filed one month before judgment entered, amounted to $11,000 in total. The court ordered the award as one of three financial orders and did not explain why it was awarding attorney's fees. Nevertheless, the record supports a finding by the trial court that the defendant lacked sufficient liquid assets with which to pay her own attorney's fees.

In addition to owing $11,000 to her attorneys, the defendant had liabilities of $29,509. Other than the percentage of the plaintiff's personal injury award recovery, there were no significant assets that the defendant

received in the distribution. Indeed there were no assets to be awarded as part of the dissolution proceeding. The only liquid asset the defendant had, according to her financial affidavit, was $532 from two bank accounts. The value of her furniture and the money in her 401K plan totaled $7075. The plaintiff does not challenge the defendant's financial affidavit but claims, nevertheless, that the attorney's fees award payable from his net recovery from his personal injury action when his attorney makes the requisite disbursements was unfair because it would "substantially deplete [the only compensation he will ever receive]." The court reasonably could have concluded that unless it awarded attorney's fees to the defendant, she lacked the liquidity necessary to enable her to pay her own fees. The plaintiff does not claim that the amount of the settlement of the claim is such that *he* will not have enough liquid funds to pay $10,000 toward the defendant's legal fees. We conclude, therefore, that the award of attorney's fees to the defendant did not constitute an abuse of the court's discretion.

## III

The plaintiff's last claim pertains to the trial court's order sustaining the defendant's objection to the introduction into evidence of five letters written by his treating psychologists and his psychiatrist. He argues that the five letters constituted reports of expert witnesses admissible either pursuant to General Statutes § 52-174 (b)[11] or, in the alternative, as business records pursuant

[11] General Statutes § 52-174 provides: "Admissibility of records and reports of certain expert witnesses as business entries. (a) In all actions for the recovery of damages for personal injuries or death, (1) if a physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician, optometrist, professional engineer or land surveyor has died prior to the trial of the action, or (2) if a physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician, optometrist, professional engineer or land surveyor is physically or mentally disabled at the time of the

to General Statutes § 52-180 (a).[12] The defendant argues

trial of the action to such an extent that he is no longer actively engaged in the practice of his profession, the party desiring to offer into evidence the written records and reports of the physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist concerning the patient who suffered the injuries or death and the reports and scale drawings of the professional engineer or land surveyor concerning matter relevant to the circumstances under which the injuries or death was sustained shall apply to the court in which the action is pending for permission to introduce the evidence. Notice of the application shall be served on the adverse party in the same manner as any other pleading. The court to which the application is made shall determine whether the person is disabled to the extent that he cannot testify in person in the action. Upon the court finding that the person is so disabled, the matters shall be admissible in evidence as a business entry in accordance with the provisions of section 52-180 when offered by any party in the trial of the action.

"(b) In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist and that the report and bill were made in the ordinary course of business. The use of any such report or bill in lieu of the testimony of such treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist.

"(c) This section shall not be construed as prohibiting either party or the court from calling the treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist as a witness."

[12] General Statutes § 52-180 provides: "Admissibility of business entries and photographic copies. (a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

in response that the letters did not meet the requirements of either statute, and further, that any impropriety by the trial court was harmless because she conceded at trial that the plaintiff was 100 percent physically and mentally disabled. Although we agree with the defendant that the failure to allow these letters into evidence, if improper, would have been harmless in light of the defendant's concession at trial, we nevertheless examine § 52-174 in order to clarify its limited application.

Section 52-174 (b) provides that "*[i]n all actions for the recovery of damages for personal injuries or death* . . . any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility.

"(c) Except as provided in chapter 3, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original.

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

or optometrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist and that the report and bill were made in the ordinary course of business. The use of any such report or bill in lieu of the testimony of such treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist." (Emphasis added.) The plaintiff argues that, because the health of the parties is a relevant factor under §§ 46b-81 and 46b-82 to be considered by the trial court in assigning property and determining alimony, this court should decide that, despite its limiting language, § 52-174 (b) applies to this case.

Applying the rules of statutory analysis set forth in this opinion, we begin with the wording of the statute, which in this case presents no ambiguity. Section 52-174 (b) applies only to those cases involving "the recovery of damages for personal injuries or death . . . ." This case presents neither. Nor is there anything in the legislative history to even suggest that the legislature intended that this statutorily created exception to the hearsay rule be applied in any other context. "[T]his bill would allow an attorney in a civil action based on personal injury or death to introduce into evidence a medical report of a physician without the necessity of in fact calling the physician to testify." 20 H.R. Proc., Pt. 8, 1977 Sess., p. 2993, remarks of Representative Ernest N. Abate.

"[Section 52-174 (b)] permits a signed doctor's report to be admitted as a business entry. . . . [It] creates a presumption that the doctor's signature is genuine and that the report was made in the ordinary course of business. See *Struckman* v. *Burns*, 205 Conn. 542, 534 A.2d 888 (1987). Thus, once the statutory requirement that the report be signed by a treating physician is met, the evidence in that report is admissible and has the same effect as a business entry." *Aspiazu* v. *Orgera*, 205 Conn. 623, 626–27, 535 A.2d 338 (1987). This statute serves the purpose of getting medical evidence before the jury in the absence of the treating physician. *Rosenberg* v. *Castaneda*, 38 Conn. App. 628, 632, 662 A.2d 1308 (1995). The need for this statutory exception allowing for a substitute for testimony was clearly driven by economics due to the necessity for medical evidence in every personal injury action for damages. There is no such corresponding need in every dissolution action. Therefore, we decline the plaintiff's invitation to extend § 52-174 (b) to this case.

The plaintiff claims in the alternative that the reports should have been admitted as business records under § 52-180. At trial, the plaintiff argued, inter alia, that the five letters, along with other documents, qualified as hospital records. The court examined each of the items, all addressed "to whom it may concern," and concluded that the four letters that had been written for litigation purposes at the plaintiff's request, and the fifth, a summary of the doctor's opinion, did not satisfy the requirements of General Statutes § 4-104 for the admissibility of hospital records.[13] For many of the same reasons

---

[13] General Statutes § 4-104 provides: "Inspection and subpoena of hospital records. Each private hospital, public hospital society or corporation receiving state aid shall, upon the demand of any patient who has been treated in such hospital and after his discharge therefrom, permit such patient or his physician or authorized attorney to examine the hospital record, including the history, bedside notes, charts, pictures and plates kept in connection with the treatment of such patient, and permit copies of such history, bedside

that the trial court determined that the five letters were not hospital records, they similarly are not business records admissible pursuant to § 52-180. As the trial court noted, these letters were "generated at [the plaintiff's] request for litigation." Consequently, the plaintiff could not properly lay the foundation for their admissibility under the hearsay exception demonstrating that the letters had been made in the regular course of business, that it was in the regular course of business to write such letters, and that the letters had been made when the act, transaction, or event occurred, or shortly thereafter. *Bell Food Services, Inc.* v. *Sherbacow*, 217

notes and charts to be made by such patient, his physician or authorized attorney. If any such hospital, society or corporation is served with a subpoena issued by competent authority directing the production of such hospital record in connection with any proceedings in any court, the hospital, society or corporation upon which such subpoena is served may, except where such record pertains to a mentally ill patient, deliver such record or at its option a copy thereof to the clerk of such court. Such clerk shall give a receipt for the same, shall be responsible for the safekeeping thereof, shall not permit the same to be removed from the premises of the court and shall notify the hospital to call for the same when it is no longer needed for use in court. Any such record or copy so delivered to such clerk shall be sealed in an envelope which shall indicate the name of the patient, the name of the attorney subpoenaing the same and the title of the case referred to in the subpoena. No such record or copy shall be open to inspection by any person except upon the order of a judge of the court concerned, and any such record or copy shall at all times be subject to the order of such judge. Any and all parts of any such record or copy, if not otherwise inadmissible, shall be admitted in evidence without any preliminary testimony, if there is attached thereto the certification in affidavit form of the person in charge of the record room of the hospital or his authorized assistant indicating that such record or copy is the original record or a copy thereof, made in the regular course of the business of the hospital, and that it was the regular course of such business to make such record at the time of the transactions, occurrences or events recorded therein or within a reasonable time thereafter. A subpoena directing production of such hospital record shall be served not less than twenty-four hours before the time for production, provided such subpoena shall be valid if served less than twenty-four hours before the time of production if written notice of intent to serve such subpoena has been delivered to the person in charge of the record room of such hospital not less than twenty-four hours nor more than two weeks before such time for production."

Conn. 476, 485, 586 A.2d 1157 (1991). Moreover, no witness testified to authenticate the reports as business records, which although not needed to satisfy § 4-104, would have been required to satisfy § 52-180. See *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 604, 717 A.2d 713 (1998). Therefore, we conclude that the trial court did not abuse its discretion in refusing to allow the introduction of the five letters as evidence.

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN and PALMER, Js., concurred.

BERDON, J., with whom MCDONALD, J., joins, dissenting. I agree with Justices Norcott and McDonald that, in an action for dissolution of marriage, the legislature intended that a form of the analytic approach[1] is required to determine whether a personal injury award[2] should be deemed (1) marital property, and thus subject to assignment pursuant to General Statutes § 46b-81, and/or (2) income that may be considered in awarding periodic alimony pursuant to General Statutes § 46b-82. In my view, this court's prior decisions compel this result, notwithstanding the majority's protestations to the contrary.

In *Bornemann* v. *Bornemann*, 245 Conn. 508, 518, 752 A.2d 978 (1998), the majority—per Justice Katz—

---

[1] See Justice McDonald's dissent in this case for citations to cases from other jurisdictions that have adopted the analytic approach.

[2] The plaintiff was awarded the following in the personal injury action:

| | |
|---|---|
| $ 750,000 | for past pain and suffering; |
| 1,600,000 | for future pain and suffering over the next twenty-nine years; |
| 80,000 | for past loss of earnings; |
| 375,000 | for future loss of earnings; and |
| 15,000 | for past medical expenses |
| $2,820,000 | Total |
| - 423,000 | 15 percent for culpable negligence of the plaintiff |
| $2,397,000 | Jury Award |

concluded in part I A of its opinion that the unvested stock options at issue in that case were "encompassed within the broad definition of property under § 46b-81."[3] This did not, however, end the discussion. Instead, the court recognized that this was merely the first step of the requisite analysis, and went on to explain in part I B of its opinion that, "[a]lthough § 46b-81 (a) employs very broad language in providing for the distribution of property in a dissolution proceeding and grants the court authority to assign to either the husband or the wife all or any part of the estate of the other, this court previously has determined that [§] 46b-81 (a) involves the assignment of *marital* assets." (Emphasis in original; internal quotation marks omitted.) Id., 521. Citing *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990), the *Bornemann* court further explained that, "in order to determine whether [an] asset is marital property," we "must determine whether an asset was *earned prior to or subsequent to the date of dissolution* . . . ." (Emphasis added.) *Bornemann* v. *Bornemann*, supra, 521. Moreover, the court emphasized that this inquiry requires us to investigate the purpose for which the award was granted. Id., 522 ("[i]n determining when unvested stock options were earned, or will be earned, the purpose for which the options were granted must be considered").

In the present case, the majority—once again, per Justice Katz—explains that the analytic approach "requires an evaluation of the *purpose* of the compensation in [order to determine whether the award is] . . .

[3] In *Bornemann*, this court held that "the trial court properly determined that the [defendant husband's unvested stock] options constituted marital property in their entirety" because they were earned prior to the date of dissolution. *Bornemann* v. *Bornemann*, supra, 245 Conn. 528. In sifting through the "conflicting factual claims" at issue in *Bornemann*, we deferred to the trial court, whose findings we characterized as "binding upon this court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) Id., 527. Such deference is inappropriate in the present appeal, which implicates a pure question of law.

*'marital' or 'personal'* property." (Emphasis added.) I am unable to perceive any difference whatsoever between this description of the analytic approach, which the majority refuses to adopt, and the one that this court adopted in *Bornemann*. Accordingly, I am unable to comprehend the majority's claim that the analytic approach does not govern this case.

Turning to the facts of the present case, part of the plaintiff's award was calculated to compensate him for the pain and suffering that he would endure after the date of the dissolution of his marriage. Unless we overrule both *Bornemann* and *Sunbury*, we cannot avoid the conclusion that this portion of the damage award is not marital property subject to assignment under § 46b-81. Therefore, the trial court was authorized to consider as marital property only that portion of the award[4] that pertains to the window of time *after* the date of the personal injury award (May 23, 1996) but *before* the date of the decree dissolving the marriage (March 18, 1997). The sole purpose of the remainder of the award was to compensate the plaintiff for pain and suffering that he would endure subsequent to the date of dissolution; accordingly, it is not subject to assignment. The contrary result, urged by the majority, cannot be reconciled with the holding of either *Bornemann* or *Sunbury*.[5]

---

[4] Less, of course, the percentage attributable to the plaintiff's contributory negligence and a proportionate amount of legal and other expenses incurred as a consequence of the personal injury action.

[5] The majority stresses that, in *Bornemann*, "when [the] options were earned [was] dispositive." I agree, but this supports—rather than undermines—my views in the present appeal. In *Bornemann* the following factors were of paramount importance: "[T]he [unvested stock] options were earned by the defendant *during the marriage* when he provided *past services* and . . . it was *in exchange for those [past] services* that the defendant was paid his salary through December, 1996 [a date prior to the termination of the marriage], and was offered the opportunity to retain the options." (Emphasis added.) *Bornemann* v. *Bornemann*, supra, 245 Conn. 529. Therefore, even though the options could not be exercised until after the date of the decree, they constituted marital property because they were earned

Likewise, only that portion of the award for future loss of earnings, less applicable credits, pertaining to the window of time referred to above may be deemed marital property subject to assignment. This does not, however, preclude the trial court from taking *the remaining amount* into consideration for the purpose of establishing periodic alimony pursuant to § 46b-82, just as it would any other future income. Similarly, the remainder of the plaintiff's personal injury award— $750,000 for past pain and suffering, $80,000 for past loss of earnings and $15,000 for past medical expenses—is also a marital asset pursuant to § 46b-81, and is thus subject to assignment.[6]

We have made clear that "the purpose of property division [in an action for dissolution] is to unscramble the ownership of property, giving to each spouse what is equitably his [or hers]." *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982). The purpose of alimony is to determine a fair amount of continuing support that one spouse requires and the other can afford. Id. An analytic approach with respect to personal

before the date of the decree. In the present appeal, the plaintiff has not yet earned the portion of the award that pertains to his *future* pain and suffering, he did *not* experience that anguish during the course of the marriage, and the relevant damages are not intended to compensate him for his *past* agony. Accordingly, the plaintiff's award for his future pain and suffering is not a marital asset. For these reasons, the majority's effort to distinguish *Bornemann* is unpersuasive.

In *Sunbury*, we explained that "appreciation in the value of property . . . [that] occur[s] after the termination of the marriage . . . is no longer a marital asset." *Sunbury* v. *Sunbury*, supra, 216 Conn. 676. In other words, to determine whether an asset is marital we must focus on the period for which it is earned, not the moment when it was received. In my view—a view that is shared by two of my colleagues—compensation for pain and suffering that the plaintiff will endure after the termination of the marriage is not a marital asset as we explained the meaning of that term in *Sunbury*. The majority's observation that "this case does not involve an increase in the value of property following the dissolution" is a distinction without a difference.

[6] See footnote 4 of this dissent.

injury awards is necessary to accomplish both of these equitable purposes, and is the only approach that comports with both common sense and prior decisions of this court. See *Builders Service Corp., Inc.* v. *Planning & Zoning Commission*, 208 Conn. 267, 276, 545 A.2d 530 (1988) (" 'the application . . . of common sense to the statutory language is not to be excluded' ").

Accordingly, I dissent.

NORCOTT, J., with whom MCDONALD, J., joins, dissenting. I disagree with the majority that portions of a personal injury award that represent both postdissolution lost wages and pain and suffering should constitute property under General Statutes § 46b-81. Accordingly, I would reverse the judgment of the trial court. As a secondary matter, I also am troubled by the way in which the majority characterizes the "property" that stems from the plaintiff's personal injury action.

Connecticut adheres to an equitable distribution scheme, as reflected in § 46b-81, which grants the court discretion in dividing between the parties all "property" belonging to either individual party. The majority correctly notes that while we have placed limits on what may be considered property under § 46b-81; see, e.g., *Simmons* v. *Simmons*, 244 Conn. 158, 165, 708 A.2d 949 (1998); this court previously has determined that the definition of property should be interpreted broadly. *Krafick* v. *Krafick*, 234 Conn. 783, 795, 663 A.2d 365 (1995).

Nevertheless, I believe that in the present case, the majority incorrectly has expanded the definition of property by including moneys that represent both postdissolution future lost wages and pain and suffering. The unique factual circumstances of this case involve a plaintiff who suffered a 100 percent physical disability, and the money he received through the personal injury action for pain and suffering provided to compensate

him for that disability. The pain and suffering is the plaintiff's alone—it is the person, not the marital estate, that has suffered a 100 percent disability. Likewise, the money received in the personal injury action for postdissolution lost wages also is designed to compensate the plaintiff for his projected inability to earn a living. Any award that is intended to compensate him for what he will not be able to earn after the dissolution of the marriage should not be included in the property divided through dissolution proceedings because that which the award represents—his future wages if he could earn them—would *not* be included in the present dissolution.

As a secondary matter, I also am concerned by the majority's characterization of the "property" that stems from the plaintiff's personal injury action. In that action, the trial court reduced the jury award in the plaintiff's favor, and he appealed that reduction. At the time of the property distribution in the subsequent dissolution proceeding, the personal injury action remained unresolved on appeal. Therefore, because the final resolution in the personal injury action was unknown, the plaintiff did not possess an actual award, and the majority's characterization of it as such is incorrect.

In examining the principle of finality of judgments, we previously have noted that "[a] final award is '[o]ne which conclusively determines the matter submitted and leaves nothing to be done except to execute and carry out the terms of [the] award.' " *Marone* v. *Waterbury*, 244 Conn. 1, 12, 707 A.2d 725 (1998), quoting Black's Law Dictionary (6th Ed. 1990). Accordingly, the potential recovery that stemmed from the personal injury action and could be divided between the plaintiff and the defendant in the dissolution action in the present case was not an actual award. Instead, the plaintiff possessed merely the right to the underlying personal injury *cause of action*.

The majority states that "[w]e recognize that this case does not raise, and therefore, we do not answer, the question of whether an inchoate personal injury claim (one that is not a present interest, but which *may* ripen) is property under § 46b-81." (Emphasis in original.) I believe, however, that this case *does* raise the issue of whether an inchoate personal injury claim is property under § 46b-81, and that the majority answers that question in the affirmative. The majority notes that a majority of courts in equitable distribution states permit the allocation of inchoate personal injury claims in dissolution actions. I believe that by the majority's decision today, this court has joined those courts, although the majority does not admit it is doing so.

Accordingly, I respectfully dissent.

MCDONALD, J., dissenting. I join both Justice Norcott's dissent and Justice Berdon's dissent from the majority's holding that personal injury awards for pain and suffering or for postdissolution lost wages are marital property. I believe that this court should adopt the analytic approach to considering the equitable distribution of personal injury awards, which divides a personal injury award into marital and nonmarital components. Compensation for lost wages during the marriage and medical expenses paid from marital assets are marital property, while compensation for pain and suffering and future lost wages or expenses are not.

The majority argues that this court should not adopt the analytic approach because "[u]nlike provisions in effect in many other jurisdictions that limit distributions to property based upon how and when it was acquired [General Statutes] § 46b-81 does not draw such distinctions." While § 46b-81 does not define "property," our precedents have interpreted the term in recognition that "marriage is, among other things, a shared enterprise or joint undertaking in the nature of a partnership to which

both spouses contribute—directly and indirectly, financially and nonfinancially—*the fruits of which* are distributable at divorce." (Emphasis in original; internal quotation marks omitted.) *Krafick* v. *Krafick*, 234 Conn. 783, 795, 663 A.2d 365 (1995). It is difficult to conceive how compensation for pain and suffering and future lost wages can be considered *fruits* of the marriage, as they do not arise out of the marriage and are independent of it. Pain and suffering, future lost wages and lost earning capacity concern only the injured spouse who must live with an injury or disability after the marriage has been dissolved. "It is entirely clear that a spouse receives compensation for pain and suffering and physical and mental disabilities for excruciatingly personal reasons, wholly apart from the labors or efforts of economic transactions of the marital partners." *Landwehr* v. *Landwehr*, 111 N.J. 491, 500, 545 A.2d 738 (1988). "Pain and suffering, disability, and loss of the ability to lead a normal, healthy life are losses personal to the injured spouse. . . . The physical and mental health of a spouse is not a marital asset which can be distributed upon the dissolution of the parties' marriage." (Citations omitted.) *Ward* v. *Ward*, 453 N.W.2d 729, 732 (Minn. App. 1990). The fact that § 46b-81 does not discriminate amongst property by method of acquisition, and the fact that this court historically has interpreted "property" very broadly, should not preclude this court from determining that certain property is not marital property when that property does not constitute "fruits of the marriage."

Many states have adopted the analytic approach to personal injury awards. See, e.g., *Jurek* v. *Jurek*, 124 Ariz. 596, 598, 606 P.2d 812 (1980); *Campbell* v. *Campbell*, 255 Ga. 461, 462, 339 S.E.2d 591 (1986); *Weakley* v. *Weakley*, 731 S.W.2d 243, 244–45 (Ky. 1987); *Ward* v. *Ward*, supra, 453 N.W.2d 731–32; *Mistler* v. *Mistler*, 816

S.W.2d 241, 249 (Mo. App. 1991); *Landwehr* v. *Landwehr*, supra, 111 N.J. 493; *Johnson* v. *Johnson*, 317 N.C. 437, 451, 346 S.E.2d 430 (1986); *Kirk* v. *Kirk*, 577 A.2d 976, 978 (R.I. 1990); *Marriage of Brown*, 100 Wash. 2d 729, 738, 675 P.2d 1207 (1984); *Hardy* v. *Hardy*, 186 W. Va. 496, 500–501, 413 S.E.2d 151 (1991). In rejecting the analytic approach, the majority points to § 46b-81, which does not limit property distributions based upon when and how the property is acquired. However, some of the states that have adopted the analytic approach have statutes that are quite similar to § 46b-81, except that they exclude certain items from marital property by definition. See Ariz. Rev. Stat. Ann. § 25-213 (West 1991) (defining separate property as that which is acquired before marriage, or afterward by gift, devise or descent); N.J. Stat. Ann. § 2A:34-23 (West Sup. 1998) (equitable distribution of all property, except that which is acquired by gift—other than interspousal gifts— devise or intestate succession); R.I. Gen. Laws § 15-5- 16.1 (b) (1996) (court may not assign property acquired prior to marriage or property acquired by inheritance or third party gift before, during or after marriage); W. Va. Code § 48-2-1 (f) (1) and (4) (1998) (separate property includes property acquired before marriage, and acquired during marriage by gift, bequest, devise, descent or distribution). Unlike Ohio, those states do not have a specific statutory exception for personal injury awards. See Ohio Rev. Code Ann. § 3105.171 (A) (6) (vi) (Banks-Baldwin 1995) (including within definition of separate property "[c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets"). Thus, those courts that have adopted the analytic approach have relied on principles of fairness and equity, rather than a specific statutory exception, to exclude these elements from marital property. The fact that § 46b-81 does not address personal injury

awards specifically or designate any exceptions to what constitutes marital property does not preclude this court from adopting the analytic approach for personal injury awards, based on fairness and equity.

As the Supreme Court of Appeals of West Virginia has stated: "[T]here [is] no equitable reason for . . . [the uninjured] spouse to profit from his or her ex-mate's recompense for suffering. . . . The only damages truly shared are . . . the diminution of the marital estate by loss of past wages or expenditure of money for medical expense. *Any other apportionment is unfair distribution*." (Emphasis in original; internal quotation marks omitted.) *Hardy* v. *Hardy*, supra, 197 W. Va. 249. Moreover, the Supreme Court of Kentucky has stated that "[a]s a matter of fairness it does not seem right that upon the dissolution of the marriage one of the parties should be rewarded because the other party had the misfortune to suffer painful injuries as a result of an accident. The law does not require such a result." *Weakley* v. *Weakley*, supra, 731 S.W.2d 245.

Accordingly, I respectfully dissent.