[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff husband commenced this action, returnable July 1, 1997, seeking a dissolution of the parties' marriage on the ground of irretrievable breakdown and other relief as appears of file. The Defendant wife filed an answer and cross complaint, dated June 24, 1997, wherein she admitted the allegations contained in the Plaintiff husband's complaint, likewise alleged the irretrievable breakdown of the marriage and sought a dissolution of marriage and other relief as appears of file. The parties were represented by counsel at all times throughout the proceedings.
The matter was tried over the course of two days. Both of the parties as well as their daughter testified. In addition to this testimony, the Court had before it the parties' respective financial affidavits as well as various exhibits which were admitted into evidence without objection. At the conclusion of trial, counsel waived argument, relying instead upon proposed orders which they had submitted in advance of trial as well as memoranda submitted subsequent to the completion of trial.[1]
The Court, having considered all of the evidence as well as the contentions of counsel in their respective memoranda, finds the following facts:
The Plaintiff husband and Defendant wife, whose maiden name was Concetta Vuono, were married at San Giacomo, Da Crip-Cosenza, CT Page 649 Italy on July 30, 1968. Both parties resided in this State continuously for one year prior to the filing of the complaint. The marriage of the parties has broken down irretrievably and there is no reasonable prospect of reconciliation. There are no minor children issue of the marriage nor have any minor children been born to the Defendant wife since the date of the marriage. Neither party is a recipient of public assistance. The Court has subject matter jurisdiction over the action as well as jurisdiction over the parties. More than 90 days have passed since the return date and all statutory stays have expired.
Both parties were born and raised in Italy. The Plaintiff husband initially came to this country in 1966 and, after marrying the Defendant wife in Italy in 1968, he returned with her to make their home here. During the course of the marriage, the parties had three children (presently 29, 27 and 24 years of age). The parties assumed roles which were traditional at the time, with the Plaintiff husband working outside the home and the Defendant wife remaining at home to care for the children and tending to the many needs of the household. At a point when all three of the children were in school, the Defendant wife began working outside the home, initially in a part-time capacity and subsequently on a full-time basis.
The Plaintiff husband is presently 51 years of age. He has a limited formal education and his ability to read and write English is likewise limited. Except for two periods of disability, the plaintiff husband was employed throughout the marriage principally as a machine operator. His first prolonged absence from work occurred from 1978 until 1980 as a result of a work-related injury he suffered. In 1980, he commenced work at Electric Boat where he continued until approximately 1994. At that point, he again suffered work-related injuries and, after having initially been relegated to light duty, he began collecting workers' compensation benefits after light duty assignments no longer were available. He was laid off at Electric Boat in 1996. He is in poor health. In fact, when he returned to Italy for a visit in the spring of 1997, he was gravely ill and hospitalized for almost two months due to complications from diabetes.[2] In addition to being diabetic, his hearing is impaired and he has documented problems with his neck and back, left arm, shoulders, wrists and hands. His physical problems prevent him from holding the types of employment which he has typically held throughout much of his life. His employment prospects are further compromised by the language barrier and his CT Page 650 lack of a formal education.
The Defendant wife is 49 years of age. Although not as severe, she too has health problems (diabetic, high cholesterol and, as of the date of trial, an impending surgical procedure which will keep her out of work for approximately six weeks). Like the plaintiff husband, she has a limited formal education and an ability to read and write English which is likewise limited. As previously noted, the Defendant wife was a homemaker until 1979, when she commenced part-time work as a housekeeper. Within a few years, she began working as a nurse's aide with her current employer where she works 40 hours per week at a rate of $11.00 per hour. In 1990, she took a second job at an interim health care facility in order to finance her daughter's college education (claiming that she alone has contributed to her daughter's college education). The Defendant wife has continued to hold down this second job where she works as many as 22 hours per week (she claims that she used to work 80 hours per week between both jobs, however she has cut back on her hours at her second job because of her health and a reduced need for her services).
The parties differ in their views regarding the causes of the breakdown of the marriage. The Plaintiff husband claims that the Defendant wife became disagreeable and distant after his family left the area in 1978. He states that they have been mutually abusive, both verbally and physically, in their arguments. The Defendant wife, on the other hand, contends that the marriage broke down because the Plaintiff husband drank excessively and was physically and verbally abusive (not surprisingly, the Defendant wife states that the worst incidents of physical and verbal abuse occurred when the Plaintiff husband was intoxicated). The police were called to the parties' residence on many occasions (with the Plaintiff husband being arrested many times and the Defendant wife at least once) and the Defendant wife required medical care on a number of occasions. The Court finds, for a number of reasons, that the conduct of the Plaintiff husband was the principal, if not sole, cause of the breakdown of the marriage. The Court makes this finding for a number of reasons. First, the Court finds the Defendant wife to have been a more credible witness. Second, if, as Plaintiff husband claims, the Defendant wife became disagreeable and distant in the late 70's, one has to wonder why it took him 20 years to commence this action. Third, the Plaintiff husband's testimony confirmed that his drinking was an issue in the marriage. Finally, the parties CT Page 651 were separated on at least two occasions during the course of their marriage. Prior to their current separation, the parties' most recent separation in 1994 led to are conciliation at the Plaintiff husband's request and only upon his signing of an affidavit wherein he (i) acknowledged the depth of his feelings for the Defendant wife, (ii) agreed to "refrain from the excessive use of alcohol . . .", and (iii) agreed to refrain from "harassing, threatening, accusing, molesting or imposing any restraint" upon the Defendant wife. This affidavit, prepared with the assistance of Plaintiff husband's then counsel, confirms that the issues raised by the Defendant wife in this proceeding have been issues between the parties in the past.[3]
The financial affidavit filed by the Plaintiff husband, who presently resides with one of his sons, reflects his receipt of net weekly income of $256.74 in the form of social security disability. He also discloses the following significant assets: his one-half interest in the marital residence (which the parties acquired in 1973 and have stipulated as having a value of $80,000 with a $30,000 mortgage); cash or cash equivalents (including bank accounts, certificates of deposit and traveler's checks) totaling $70,000; a real estate parcel located in Italy which he inherited from his parents; and his Electric Boat pension which provides a monthly benefit of $480.92 commencing at the time the Plaintiff husband attains age 65. The Plaintiff husband's financial affidavit does not reflect a vested pension interest which he has through his Laborer's Union. More significantly, the Plaintiff husband's financial affidavit does not fully reflect substantial sums which he received this past spring in the form of a $160,000 Longshore and Harbor Workers' Compensation settlement (the "workers' compensation award" or "workers' compensation settlement") and an additional $8,000 representing the proceeds of a check which he recently received from the Social Security Administration or related governmental agency. The plaintiff husband acknowledges having received these funds, however he claims that he only has approximately $52,000 left (this $52,000 constituting a portion of the $70,000 in cash assets noted above). As to the remaining funds (in excess of $100,000), the plaintiff husband claims that he gave two of his sons a total of $11,000 and he simply "blew" the rest. The could not state with any specificity the disposition which he made of these funds other than to state that he lost most of it at the local casinos. The Court does not find Plaintiff husband's claim in this regard to be credible. The Court makes this finding for a number of reasons. First, and as previously noted, the Court did CT Page 652 not find the plaintiff husband to be a credible witness (particularly in regard to his unpersuasive explanation of his disposition of these funds). Moreover, the Plaintiff husband acknowledges that prior to his receipt of these substantial funds, he might lose a few hundred dollars on those occasions when he went to the casino. It is simply not credible that an individual at this stage in his life with limited opportunities in the future and accustomed to playing low stakes games of chance would, in a short period (less than two months not including periods of hospitalization), lose approximately $100,000 as plaintiff husband claims here. It is also worthy of note that the Plaintiff husband did not disclose to the Defendant wife the fact that he had received these funds. He claims that he did not have time to tell the Defendant wife of this fact from the time he received the funds until the time he left for Italy (yet, if he is to be believed, he did have time to gamble away some of these funds at the casino during this time frame). For the reasons noted above, the Court concludes that the Plaintiff husband is concealing a substantial portion of the funds which he received from the workers' compensation settlement as well as the Social Security Administration.
The financial affidavit filed by the Defendant wife, who presently resides in the marital residence with at least one of her children, reflects net weekly income of $383.58 from full-time employment and $133.78 from part-time employment, together with rent of $121.24 per week (from the rental of the other half of the marital residence) for a total net weekly income of $638.60. She also discloses her one-half interest in the marital residence as her only significant asset. She also acknowledged at trial that she has (i) land in Italy (apparently having a value comparable to the land in Italy owned by plaintiff husband), (ii) a personal injury claim (concerning which the Court received little information and nothing indicative of the value thereof), and (iii) a check in the approximate amount of $1,000 representing a refund on the parties' Connecticut income tax return (which she claims on the theory that (a) she earned all the income, (b) she paid all the income tax and (c) the Plaintiff husband earned no income and therefore neither paid any tax nor generated any refund). Her financial affidavit also reflects a certificate of deposit which she claims to hold as trustee for her daughter (a claim which the Plaintiff husband apparently does not dispute). She has no significant funds to fall back on in the event a future deterioration of her health impairs her ability to work. Obviously, the parties own furniture and furnishings as CT Page 653 well as their own respective personal effects. Her financial affidavit reflects liabilities totaling $29,000 ($25,000 of which represents student loans taken for the college education of her daughter and one of her sons).
The parties' rights are governed by General Statutes §§46b-81 (distribution of the marital estate), 46b-82 (alimony) and46b-62 (attorneys' fees). These statutes require that the Court consider, as it has, various specified factors (which are not exclusive) in order to fashion equitable orders in proceedings of this nature. No two cases are alike and, therefore, the weight to be accorded each factor will vary depending upon the unique circumstances of each case. In the context of this case, some of the factors are neutral in the sense that they do not weigh in favor of either party, e.g. the parties are roughly comparable in age; they share a similar station in life; and their vocational skills are limited. Other factors, however, have greater significance, e.g. this is a lengthy marriage; the conduct of the Plaintiff husband is the principal, if not sole, cause of the breakdown of the marriage; and the defendant wife's health, albeit of concern, is considerably better than the Plaintiff husband's health (which appears to presently preclude any significant or sustained meaningful employment).[4]
Certain issues of law require comment. The first issue, addressed by the parties in their respective post-trial memoranda of law, involves the treatment of the workers' compensation award received by the Plaintiff husband. He appears to claim that the award is not subject to distribution. The Defendant wife, on the other hand, claims that the award is part of the marital estate and, therefore, subject to distribution.[5] Although the issue was somewhat unsettled at the time the parties filed their memoranda, our Supreme Court has since addressed this issue inLopiano v. Lopiano, 247 Conn. 356 (1998). In Lopiano, the Court, interpreting the term "property" broadly pursuant to §46b-81, concluded that a personal injury award is marital property subject to equitable distribution.[6] Accordingly, the funds received by the Plaintiff pursuant to his workers' compensation settlement are properly considered part of the marital estate. The inclusion of these funds, however, is not dispositive of the manner or extent to which they are to be distributed between the parties. That determination requires the Court's consideration of all of the factors contained in § 46b-81.
The second legal issue involves this Court's authority to CT Page 654 order spousal support pursuant to General Statutes § 46b-82
to a party who has not made a claim for such relief. Specifically, the Plaintiff husband, who proposes to retain a significantly greater share of the marital assets than the Court deems equitable, makes no specific claim for alimony either in his complaint[7] or his proposed orders[8]. The Court notes that, at least at the present time, the Plaintiff husband's current circumstances impair his ability to support himself and the Defendant wife has the ability (even without her part-time employment) to help the Plaintiff husband meet his basic living expenses. Under these circumstances, the Court, possessing equitable powers to fashion an appropriate resolution of this matter, may award alimony to a party even in the absence of claim for such relief. Lord v. Lord, 44 Conn. App. 370, 374, cert. den.241 Conn. 913 (1997).
 ORDERS
1. A decree of dissolution of marriage shall enter.
2. The Plaintiff husband shall convey to the Defendant wife all of his right, title and interest in and to the premises located at 535 East Main Street in Norwich, Connecticut, subject to the first mortgage thereon, which the Defendant wife shall assume and pay in accordance with its terms, indemnifying and holding the Plaintiff husband harmless therefrom.
3. The Plaintiff husband shall pay to the Defendant wife the sum of $50,000 forthwith. He shall retain all remaining proceeds from his workers' compensation award.[9]
4. Each party shall retain, free and clear of any claim of the other, the vehicles in their respective possession, indemnifying and holding the other harmless from any liability or claim associated with his or her respective vehicle.
5. The Plaintiff husband shall transfer to the Defendant wife 50% of his presently accrued interest in each of the (i) General Dynamics (Electric Boat) pension plan and (ii) Laborer's Union pension plan. To the extent permitted by each of said plans, each party shall designate the other as the sole and exclusive beneficiary of any pre-retirement survivor annuity benefit provided by such plan.
6. The Plaintiff husband shall retain, free and clear of any CT Page 655 claim of the Defendant wife, all items of personal property reflected on Plaintiff's Exhibit 7 with the exception of the snowblower, rototiller and weedwacker (which latter items shall belong to the Defendant wife, free and clear of any claim of the Plaintiff husband).
7. Except as otherwise set forth above, each party shall retain, free and clear of any claim of the other, all other property which they respectively possess or own. In the case of the Plaintiff husband, this shall include, without limitation, all of his personal effects (including any purely personal effects, not including furniture or furnishings, which remain in the marital residence), his real estate in Italy and any bank accounts or other funds held in his name or for his benefit. In the case of the Defendant wife, this shall include, without limitation, all of her personal effects, the furniture and furnishings in the marital residence, her real estate in Italy, her personal injury claim, and any and all bank accounts or other funds held in her name or for her benefit.[10]
8. The Defendant wife shall pay alimony to the Plaintiff husband in the amount of $250 per month terminating upon the death of either party, the Plaintiff husband's remarriage or cohabitation pursuant to General Statute § 46b-86(b) or 12 years following the date of this decree, whichever of the foregoing events first occurs. This order shall be non-modifiable in duration but modifiable in amount. The Defendant wife shall cooperate with the Plaintiff husband in exercising any rights he may have to continue medical insurance coverage under her employment-related plan provided, however, that the cost of any such continued coverage shall be borne by the Plaintiff husband.
9. The Plaintiff husband shall pay alimony to the Defendant wife in the amount of $1 per year terminating upon the death of either party, the Defendant wife's remarriage or cohabitation pursuant to General Statute § 46b-86(b) or 12 years following the date of this decree, whichever of the foregoing events first occurs. This order shall be non-modifiable in duration but modifiable in amount.[11]
10, Except as otherwise set forth above, each party shall be responsible for his or her respective liabilities, indemnifying and holding the other harmless therefrom.
11. Each party shall be responsible for his or her respective CT Page 656 attorneys' fees.
12. Each party shall execute all documents necessary to the effectuation of the orders contained herein.
13. The Court will retain jurisdiction to effectuate the transfer of the pension interest pursuant to any Qualified Domestic Relations Orders which may be necessary.
Solomon, J.