[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 566
The plaintiff wife brought this action seeking dissolution of the marriage, sole custody of the minor children, and other relief. The defendant seeks joint custody of the children, Brett Baker, who was born July 30, 1987, and Michael Baker, who was born May 30, 1988.
The court heard the parties over two days of trial, observed their demeanor, and evaluated their credibility. The plaintiff's father testified. Documentary evidence was introduced and financial affidavits were supplied. In addition, the court took judicial notice of two other cases, Baker v. Baker, Docket Number FA 97 0103219, which was the husband's action for a restraining order pursuant to Section 46b-15 of the General Statutes, andBaker v. Connecticut Department of Transportation et al., Docket Number CV 94-0543861 S, which is a personal injury claim brought by the husband against various entities alleged to have caused him personal injuries and which includes a claim for loss of consortium by the wife.
The plaintiff, now thirty two, married the defendant on June 5, 1987. A high school graduate, she had hoped to attend college and veterinary school. She gave up those aspirations after the birth of the older child soon after the marriage, and devoted the next several years to parenting and working. In 1995, she enrolled in a school to learn tractor-trailer driving, and immediately found employment in that field upon completing her training. She continues to work in the field, but has reached a level of seniority that allows her to work during the day, when the children are in school.
The defendant, now thirty four, graduated from high school and served in the United States Army prior to attending driving school. At the time of the marriage, he was employed as a truck driver, and he held that employment until 1993, when he suffered a debilitating injury to his back and neck while driving a tractor-trailer truck for his employer. Although he attempted to return to work about a year after the accident, he was unable to perform driving and related duties, and had to leave work in August, 1994. He has not worked since then. He received temporary total benefits through worker's compensation for a period, and later received a stipend through the state rehabilitation service to attend school. Both were based on a compensation rate of CT Page 567 $512.00 every two weeks. He completed most of the requirements for an associate's degree prior to June 1998, and in September 1998 enrolled in a bachelor's degree program at the University of Rhode Island with the assistance of a Pell grant and a rehabilitation program sponsored by the United States government. These grants pay for his school expenses and housing and food. He anticipates that he will receive two bachelor's degrees from the university in 2001 in the environmental field, and expects to be able to earn $200,000.00 to $500,000.00 per year as a consultant in that field upon graduation, provided he does not instead pursue his Ph.D. degree as he plans. He also expects to be able upon graduation to implement his plan to fix Long Island Sound. His sons will be fourteen and thirteen when the defendant graduates from college, and at or near the age of majority when and if he pursues his graduate degree.
Throughout the marriage, the wife had primary care taking responsibility for the children, although the husband was active in many of their activities. However, between August 1997 and July 1998 the boys resided with him. That living arrangement began when the wife agreed to permit the children to share a part of their summer vacation with the husband. At the end of the summer, he refused to return the children, and ultimately obtained a restraining order against the wife which granted him custody. He testified and the court finds that the husband obtained the restraining order without fully understanding the grounds for it or the implications of it. In addition, some of the information the defendant supplied in obtaining the order was not factual. Finally, there is no basis to conclude that the wife was ever violent or abusive toward the children or violent toward her husband.
The children experienced emotional and academic difficulties during the period they lived with their father. Although the defendant testified that he played or coached many sports with them and was involved in their activities, his conduct in that regard was not effective to prevent the academic difficulties and acting out that occurred. The defendant's testimony that nine year old Michael was punished by his father by having to write "I forgot my homework" a thousand times each time he forgot his homework illustrates what the court finds to be a lack of mature perspective on the defendant's part toward his children. In addition, the children were caused by the defendant to be estranged from their mother while they were living with their father, to their detriment. CT Page 568
In June 1998, the children were returned to the custody of the wife by a court order entered after a stipulation of the parties. The order included a provision that the husband not have contact with the children until he completed a psychiatric evaluation by Dr. Greyson. Although the wife paid $1,000.00 toward Dr. Greyson's fee to complete the evaluation, the defendant only attended one of three scheduled appointments, and did not undertake to ensure that the evaluation was completed. As a result, the defendant has not seen or spoken to his children for seven months. The court finds that the defendant's failure to see his children is voluntary on his part and not attributable to any conduct on the part of the wife or the children.
The court finds that the defendant's efforts to complete a college degree is laudable. While it appears that he will not be able to return to his former employment, he has undertaken to make himself employable. Nevertheless, there are two aspects of the defendant's academic activities and aspirations that are concerning. First, although he has done extremely well in his courses, the defendant's expectations about what he will be able to accomplish professionally and financially upon completion of his degree are not credible. His inability to formulate realistic expectations concerning his prospects has implications for his ability to provide parenting for his children. Secondly, his educational efforts will keep him from employment while he remains in school. This has implications for his ability to provide support for his children during the greater part of their minority. The defendant has a present earning capacity of $290.00 per week if he were to work full time as a technical worker in the environmental field using the skills he learned through his associate's degree program, and half that if he were to work only twenty hours part time. While the court finds that the defendant's activities will enable him to pay greater support during the children's teenage years, the court cannot ignore his obligation to provide support now. The court finds that the defendant can work part time without sacrificing his educational plans. Accordingly, the court finds that the defendant has a present earning capacity of $145.00 per week.
It is in the best interest of the children that they remain in the custody of the plaintiff and reside with her. It is in their best interest that they have an opportunity to reestablish a relationship with their father, provided that he complies with the orders the court enters to assure the well-being of the CT Page 569 children.
The cause of the breakdown of the marriage was the motor vehicle accident that the defendant experienced in 1993 and its consequences. The accident made it impossible for him to work, causing great financial hardship and stress. It caused him great pain and limited his activities. It resulted in the plaintiff's having to take a job to support the family, which caused strains of its own. Finally, it caused the defendant to withdraw from the family's activities and to seek intellectual and personal stimulation on his computer, including surfing the internet and attempting a writing career. The court finds that the proceeds of the defendant's personal injury action against the Connecticut Department of Transportation and others is marital property subject to distribution in this case. See, Lopiano v. Lopiano,247 Conn. 356 (1998).
In making its orders, the court has considered its findings and the statutory criteria set forth in Sections 46b-82 and 46b-83 of the General Statutes. The court has also considered relevant case law. The court orders as follows:
1. The court has jurisdiction and all statutory stays have expired. The marriage of the parties has broken down irretrievably, and the same is hereby dissolved.
2. The plaintiff is restored to the use of her maiden name, and shall henceforth be known as Colleen Shaughnessy.
3. The husband shall pay the wife the sum of $1.00 per year as alimony until January 7, 2010. Alimony shall be modifiable upon a substantial change in the circumstances of either party, including but not limited to the husband's attainment of employment and the acquisition by the parties of any assets which are forthcoming from the husband's personal injury case. The term of alimony may be extended if the wife is unable for health reasons to maintain her employment, but may not be reduced. Alimony shall be terminable upon the death of either party.
4. The husband shall pay the sum of $65.00 per week as child support commencing on February 15, 1998 and continuing until each child has reached the age of eighteen or graduated from high school, whichever is later, but in no event past the child's nineteenth birthday. This figure takes into account the fact that the husband receives an allowance for his living expenses CT Page 570 including rent and food.
5. For each year in which the husband has an obligation to pay alimony or support, he shall supply the wife by April 15 of the ensuing year a verified account of the income he received during the previous year, including salary, fees, commissions, grants, payments in kind, and contributions to tuition or other expenses.
6. Each party shall maintain the children on his and her medical insurance as it is available through their employment. The parties shall pay equally all unreimbursed medical expenses for the children.
7. The defendant shall not have contact with the children until he has completed the psychiatric evaluation previously ordered. When the evaluation has been completed and presented to the parties, the defendant shall have visitation with the children under the terms set forth herein, provided that the evaluation does not raise concerns for the safety or well-being of the children if visitation resumes. In the event that either party believes the evaluation raises such concerns, that party shall return to court for further orders after a hearing. The court will retain jurisdiction. When visitation resumes, it shall be supervised by the plaintiff's father at his residence for a period of four months. At the conclusion of that period, the parties shall return to court for further orders consistent with the best interests of the children, and the supervision of visitation shall not terminate until further order of the court. Supervised visitation shall occur for at least six hours per week on a schedule arranged to accommodate the schedules of the defendant and the needs of the children. The defendant shall not inquire of the children concerning their address or telephone number, and shall not have contact with the children except through supervised visitation until further order of the court. Neither party will say anything to the children to reduce their esteem for the other, or do anything to interfere with a positive relationship by the children with both parents. The plaintiff's father shall not interfere with the visitation except to protect the safety and well-being of the children. The plaintiff shall keep the defendant informed about the health, education, and activities of the children.
8. The defendant shall take those personal belongings of the children in his possession to the home of his parents or the CT Page 571 plaintiff's father within twenty days so that the children can have use of them. He shall similarly deliver such personal property as is ordered herein.
9. The defendant shall transfer to the plaintiff the following items of personal property: the computer, provided that he shall first delete from the computer's hard drive any material which is inappropriate for children; the encyclopedia set; the buffalo skull and Indian motorcycle drawings; and the Olympus zoom camera. The plaintiff shall deliver to the defendant's parent's home all of the defendant's fishing equipment in her possession. The parties shall arrange for mediation with family relations concerning the other items of personal property which have not previously been divided, including family photographs. If they are unable to agree after mediation, they shall return to court for further hearing. The court will retain jurisdiction.
10. The plaintiff shall have any proceeds from her loss of consortium claim in the defendant's personal injury lawsuit. The defendant shall pay the plaintiff, and the plaintiff shall have one third of the net recovery he receives from that lawsuit, including all sums awarded for past and future damages whether by way of lump sum payments or annuities.
11. The defendant shall pay the plaintiff $1,000.00, which she paid to Dr. Greyson for the psychiatric examination.
12. The defendant shall assume liability for and hold the plaintiff harmless on the following debts: the $1,500.00 debt for the vacuum cleaner; the $69.00 urology bill. The defendant shall assume liability for and hold the plaintiff harmless with respect to two-thirds of all other debts of the parties. The plaintiff will assume liability for and hold the defendant harmless with respect to one-third of all other debts of the parties.
Judgment will enter in accordance with these orders.
By the Court,
Gruendel, J.