JOHN DOE ET AL.* *v.* JONATHAN RAPOPORT ET AL.
(AC 23125)

Lavery, C. J., and Bishop and Hennessy, Js.

---

* On April 26, 2001, the trial court granted the plaintiffs' ex parte motion to use pseudonyms to protect the privacy of the minor plaintiffs, James Doe and Jeff Doe. The court also granted the plaintiffs' ex parte motion to seal the court file.

Submitted on briefs September 19—officially released November 4, 2003

*James J. Farrell,* for the appellants (defendants).

*Joseph G. Walsh,* for the appellee (plaintiffs).

*Opinion*

LAVERY, C. J. The defendants, Jonathan Rapoport, Haig Development, LLC, and Opus Management, Inc., appeal from the judgment of the trial court granting a prejudgment attachment in the amount of $1 million in favor of the plaintiffs, John Doe, Jane Doe, James Doe and Jeff Doe. On appeal, the defendants claim that (1) the court improperly found that the affidavit on which the court based its judgment was sufficient to establish probable cause under General Statutes § 52-278d, (2) the court improperly admitted into evidence a medical report pursuant to General Statutes § 52-174 (b) and (3) the plaintiffs failed to initiate a valid civil action. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendants' appeal. On February 14, 2001, Rapoport pleaded guilty to three counts of risk of injury to a child in violation of General Statutes § 53-21 (2).[1] The victims of Rapoport's criminal actions were the minor plaintiffs, James Doe and Jeff Doe. Subsequent to Rapoport's guilty plea, the plaintiffs[2] filed an application for a prejudgment remedy seeking an attachment to secure the sum of $1 million against

[1] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ." The criminal conduct in this case allegedly occurred between 1992 and 1998. General Statutes § 53-21 was amended twice during that period for purposes not relevant here. For convenience, we cite the 1997 revision of the General Statutes. See Public Acts 1995, No. 95-142, § 1, and Public Acts 1997, No. 97-147, § 1.

[2] John Doe and Jane Doe brought this action as parent and next friend of the minor children, James Doe and Jeff Doe. John Doe and Jane Doe also brought this action on their behalf for damages arising from the minor plaintiffs' injuries.

the property or assets of the defendants.[3] On May 11, 2001, the defendants were served with the plaintiffs' application for the attachment, accompanying documents,[4] including an unsigned copy of the complaint, and an affidavit from John Doe in support of the application for the attachment.

The plaintiffs' proposed twelve count complaint alleged various causes of action against Rapoport, including battery, assault and sexual contact with each of the minor plaintiffs. Count eleven alleged that Rapoport had quitclaimed certain real property to Haig Development, LLC, with the "intent to hinder, delay or defraud creditors." Count twelve alleged that the property transfer was made by Rapoport without his having received a reasonable equivalent value and that he either was insolvent at the time of the transfer or became insolvent as a result thereof. A hearing on the plaintiffs' motion for the attachment was scheduled for

[3] The plaintiffs requested an order "garnishing the defendant Opus Management, Inc. . . . as it is the agent or trustee of . . . Rapoport in that it has property . . . or goods or effects . . . of Rapoport, or is indebted to him."

[4] General Statutes § 52-278c (a) provides in relevant part that "any person desiring to secure a prejudgment remedy shall attach his proposed unsigned writ, summons and complaint to the following documents:

"(1) An application, directed to the Superior Court to which the action is made returnable, for the prejudgment remedy requested;

"(2) An affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff;

"(3) A form of order that a hearing be held before the court or a judge thereof to determine whether or not the prejudgment remedy requested should be granted and that notice of such hearing complying with subsection (e) of this section be given to the defendant;

"(4) A form of summons directed to a proper officer commanding him to serve upon the defendant at least four days prior to the date of the hearing, pursuant to the law pertaining to the manner of service of civil process, the application, a true and attested copy of the writ, summons and complaint, such affidavit and the order and notice of hearing . . . ."

May 21, 2001, and then rescheduled for June 12, 2001. Further delays ensued, and the hearing was again delayed. On July 20, 2001, the plaintiffs served the defendants with the twelve count complaint. A hearing on the plaintiffs' original application had not been rescheduled. The plaintiffs, therefore, filed a second application, which was served on the defendants on November 7, 2001. On November 15, 2001, the court granted the plaintiffs' motion for default for the defendants' failure to appear.

A hearing on the plaintiffs' application was held on December 20, 2001. At that hearing, the court heard testimony from Jane Doe, and various documents were introduced into evidence. On May 14, 2002, the court issued its memorandum of decision. The court found that the affidavit that was submitted in support of the application was sufficient to establish probable cause to believe that it was likely that the plaintiffs would succeed on the merits. Accordingly, the court granted the plaintiffs' application. This appeal followed.[5]

## I

The defendants first claim that the court improperly found that the affidavit on which the court based its decision was sufficient to establish probable cause under General Statutes § 52-278c. Specifically, the defendants argue that the affidavit contained no reference to any damages suffered by the plaintiffs and that the affidavit therefore could not support a finding of probable cause. We disagree.

We set forth the following legal principles that will aid in the resolution of that issue. "A hearing on an application for prejudgment remedy is not a full-scale

[5] General Statutes § 52-278*l* (a) provides in relevant part that "[a]n order (1) granting or denying a prejudgment remedy following a hearing under section 52-278d . . . shall be deemed a final judgment for purposes of appeal."

trial on the merits of the plaintiffs' claims . . . but rather concerns only whether and to what extent the plaintiff is entitled to have property of a defendant held in custody of the law pending final adjudication of the merits of the action. . . . Appellate review of the trial court's decision is limited to whether it was clearly improper and whether the trial court's conclusion was reasonable. . . . In the absence of a procedural flaw in prejudgment remedy proceedings . . . appellate courts have only a limited role to play in reviewing a trial court's broad discretion to deny or to grant a prejudgment remedy." (Citations omitted; internal quotation marks omitted.) *Soltesz* v. *Miller*, 56 Conn. App. 114, 116, 741 A.2d 335 (1999).

"[A]n appellate court is entitled to presume that the trial court acted properly and considered all the evidence. . . . [Our role] is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . Thus, this court's review is limited to whether the trial court's conclusion was reasonable." (Citation omitted; internal quotation marks omitted.) *Bosco* v. *Arrowhead by the Lake, Inc.*, 53 Conn. App. 873, 875, 732 A.2d 205 (1999).

In the present case, John Doe provided an affidavit with the application for the attachment. The affidavit stated that Rapoport had pleaded guilty to conduct that constituted a risk of injury to a child in violation of § 53-21. Furthermore, that conduct was committed against the minor children in this matter.

As we have stated, the probable cause hearing is not a full-scale trial on the merits. "The plaintiff does not

have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . . [T]his weighing process applies to both legal and factual issues. . . . In addition, the trial court has the responsibility, after the adversarial evidentiary hearing, to consider not only the validity of the claim but also the amount that is being sought." (Citation omitted; internal quotation marks omitted.) *Giordano* v. *Giordano*, 39 Conn. App. 183, 206, 664 A.2d 1136 (1995). Stated more succinctly, "[p]robable cause for purposes of the [prejudgment remedy] statutes is a flexible common sense standard that does not demand that a belief be correct or more likely true than false." *Fischel* v. *TKPK, Ltd.*, 34 Conn. App. 22, 24, 640 A.2d 125 (1994). The affidavit, although very brief, supplied the court with the necessary facts to support a finding that there was probable cause to sustain the validity of the plaintiffs' claims.

Even if we were to conclude that the affidavit alone was insufficient to support a finding of probable cause, the evidence presented at the hearing amply supported such a finding. Our Supreme Court has stated that "a plaintiff may present evidence at a hearing on a motion to dissolve an ex parte prejudgment attachment in order to support an insufficient initial affidavit." *Glanz* v. *Testa*, 200 Conn. 406, 408, 511 A.2d 341 (1986). We see no reason why the plaintiffs in this case should not be permitted to use evidence at the hearing to buttress the facts contained in the affidavit.

The plaintiffs supplied evidence at the hearing that further supported the court's finding of probable cause. First, Jane Doe testified that she was present when Rapoport pleaded guilty. She further testified that Jeff Doe had received treatment from both a psychologist and a psychiatrist. She stated that Jeff Doe had not

received the recommended amount of treatment due to a lack of financial resources.

Second, the plaintiffs introduced a certified copy of Rapoport's criminal judgment and a transcript of his plea. Both of those documents supported the allegations set forth in the complaint. Third, the report of William Hartman, a psychologist who treated Jeff Doe, was admitted into evidence.[6] That report detailed the various traumatic effects of Rapoport's sexual abuse and the subsequent serious effect on Jeff Doe. Furthermore, the report acknowledged that years of specialized psychotherapy, perhaps even a residential treatment setting, likely will be necessary. On the basis of that evidence, it is clear that the court did not abuse its discretion or commit clear error in granting the plaintiffs' application for an attachment.

## II

The defendants next claim that the court improperly admitted into evidence Hartman's medical report pursuant to § 52-174 (b).[7] Specifically, the defendants argue that the report failed to meet the requirements of § 52-174 (b) in that (1) no bill for treatment accompanied the report and (2) the report did not disclose Hartman's area of expertise or whether he actually treated Jeff Doe. We address each argument in turn.

---

[6] In part II, we determine that the court did not abuse its discretion in admitting the report into evidence.

[7] General Statutes § 52-174 (b) provides in relevant part: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977 . . . and in all other civil actions pending on October 1, 2001, or brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating . . . psychologist . . . may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating . . . psychologist . . . and that the report and bill were made in the ordinary course of business. The use of any such report or bill in lieu of the testimony of such treating . . . psychologist . . . shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating . . . psychologist . . . ."

## A

The defendants first argue that § 52-174 (b) requires that a bill for treatment must accompany the report for the report to be admissible. The defendants further claim the bill is necessary to demonstrate that the provider, in this case a psychologist, treated the plaintiff in the ordinary course of practice. We are not persuaded.

The defendants argue in their brief that "§ 52-174 requires that both the bill for treatment and the report be admitted together." The defendants, however, have failed to provide us with any rule of law to support that claim. As we frequently have stated, "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis. . . . *Wachter* v. *UDV North America, Inc.*, 75 Conn. App. 538, 545–46, 816 A.2d 668 (2003)." (Internal quotation marks omitted.) *Ghent* v. *Meadowhaven Condominium, Inc.*, 77 Conn. App. 276, 289, 823 A.2d 355 (2003).

Even if we were to consider the defendants' claim, we would conclude that the § 52-174 (b) does not require that a bill for treatment accompany the medical report. At the outset, we set forth the applicable standard of review. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *MacMillan* v. *Higgins*, 76

Conn. App. 261, 274, 822 A.2d 246, cert. denied, 264 Conn. 907, 826 A.2d 177 (2003).

Simply put, the defendants' claim that a bill for treatment must accompany a medical report for the report to be admissible pursuant to § 52-174 (b) is without merit. We have stated that the language of the statute is the most important factor in statutory construction. See *In re Shonna K.*, 77 Conn. App. 246, 254, 822 A.2d 1009 (2003). The language of § 52-174 (b) provides in relevant part: *"The use of any such report or bill in lieu of the testimony . . . ."* (Emphasis added.) The use of the disjunctive "or" indicates that either a report or a bill may be used by the offering party as long as it was signed by the treating physician. See *Lopiano* v. *Lopiano*, 247 Conn. 356, 383, 752 A.2d 1000 (1998) (" '[t]hus, once the statutory requirement that the report be signed by a treating physician is met, the evidence in that report is admissible and has the same effect as a business entry' "). Moreover, the legislative history supports such an interpretation. "[T]his bill would allow an attorney in a civil action based on personal injury or death *to introduce into evidence a medical report of a physician* without the necessity of in fact calling the physician to testify." (Emphasis added; internal quotation marks omitted.) Id., 382, quoting 20 H.R. Proc., Pt. 8, 1977 Sess., p. 2993, remarks of Representative Ernest N. Abate.

Finally, as we have stated, the defendants have failed to provide us with any case law indicating such a requirement. Our research has found, however, instances where a report was admitted pursuant to § 52-174 (b) without an accompanying bill. See, e.g., *Pineau* v. *Home Depot, Inc.*, 45 Conn. App. 248, 252–54, 695 A.2d 14 (1997) (court properly admitted cover letter of treating physician pursuant to § 52-174 (b)), appeal dismissed, 245 Conn. 422, 713 A.2d 825 (1998); *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 750, 654 A.2d 771 ("signed report of a treating physician may be used in lieu of

the testimony of that treating physician"), cert. denied, 232 Conn. 922, 656 A.2d 670 (1995).

On the basis of the foregoing, we conclude that it was not necessary for the plaintiffs to submit a bill for treatment for the Hartman report to be admissible pursuant to § 52-174 (b).

### B

The defendants next argue that the report did not disclose Hartman's area of expertise or whether he actually treated Jeff Doe. The defendants further claim that because the report failed to contain that information, it was hearsay, and the court improperly admitted the report into evidence. We disagree.

As a preliminary matter, we set forth the applicable standard of review. "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and . . . evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of a substantial prejudice or injustice." (Internal quotation marks omitted.) *Sheiman* v. *Sheiman*, 72 Conn. App. 193, 201, 804 A.2d 983 (2002).

Our Supreme Court has set forth the requirements for a report to be admissible pursuant to § 52-174 (b). "[Section 52-174 (b)] permits a signed doctor's report to be admitted as a business entry. . . . [It] creates a presumption that the doctor's signature is genuine and that the report was made in the ordinary course of business. . . . Thus, once the statutory requirement that the report be signed by a treating physician is met, the evidence in that report is admissible and has the same effect as a business entry. . . . This statute serves the purpose of getting medical evidence before the jury in the absence of the treating physician. . . .

The need for this statutory exception allowing for a substitute for testimony was clearly driven by economics due to the necessity for medical evidence in every personal injury action for damages." (Citations omitted; internal quotation marks omitted.) *Lopiano* v. *Lopiano*, supra, 247 Conn. 383.

In the present case, the plaintiffs, pursuant to Practice Book § 13-4,[8] disclosed Hartman as the psychologist who had treated Jeff Doe. Furthermore, at the hearing, Jane Doe testified that Hartman was the treating psychologist of Jeff Doe. Hartman signed the report that was admitted into evidence. On the basis of those facts, it is clear that the requirements of § 52-174 (b) were met; the report was signed by the treating psychologist. We conclude, therefore, that the court did not abuse its discretion in admitting the Hartman report into evidence pursuant to § 52-174 (b).

## III

The defendants' final claim is that the plaintiffs failed to initiate a valid civil action. Specifically, the defendants argue that the plaintiffs' first application was deemed withdrawn on June 21, 2001, when a hearing was not scheduled within thirty days of the original hearing date of May 21, 2001. The defendants further assert that because the original application was withdrawn, service of the civil action on July 20, 2001, was somehow invalid, as was the service for the second application for the attachment that was made on November 7, 2001.

---

[8] Practice Book § 13-4 (4) provides in relevant part that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ."

Aside from a reference to General Statutes §§ 52-278d (b)[9] and 52-278j (b),[10] the defendants again have failed to provide this court with any meaningful legal analysis of their claim. The applicability of the statutes cited by the defendants is not clear, as the original application was never granted or denied. Absent such legal analysis, the claim is deemed waived. See *Ghent* v. *Meadowhaven Condominium, Inc.*, supra, 77 Conn. App. 289.

Even if we were to review that claim, it is clear that it is without merit. General Statutes § 52-278h provides that "[t]he provisions of this chapter shall apply to any application for prejudgment remedy filed by the plaintiff at any time after the institution of the action, and the forms and procedures provided therein shall be adapted accordingly." The plaintiffs in this case commenced an action on July 20, 2001, and even if we assume arguendo that the first application was deemed to have been withdrawn due to a lapse of time, the service of the second application on November 7, 2001, was valid. Thus, service of the complaint, and the application for

[9] General Statutes § 52-278d (b) provides that "[t]he clerk, upon the granting of the application for prejudgment remedy, shall deliver to the applicant's attorney the proposed writ, summons and complaint for service of process. If the court does not grant the application for any reason, including the failure of the plaintiff to serve the defendant, only a summons and complaint may be issued and served. In either event, the plaintiff may alter the return date of the writ, summons and complaint or the summons and complaint, as the case may be. No additional entry fee shall be collected upon the return of such action to court unless the prejudgment remedy or application for such prejudgment remedy was dismissed or withdrawn pursuant to the provisions of section 52-278j."

[10] General Statutes § 52-278j (b) provides that "[i]f an application for a prejudgment remedy is denied and the plaintiff, within thirty days thereof, does not serve and return to court the writ of summons and complaint for which the prejudgment remedy was requested, or if a date for a hearing upon a prejudgment remedy is scheduled by the clerk and such hearing is not commenced within thirty days thereof, except as provided in section 52-278e, the court shall order the application to be considered as having been withdrawn."

the attachment and the hearing on the application all were valid and proper.

The judgment is affirmed.

In this opinion the other judges concurred.