STATE OF CONNECTICUT *v.* FREDERICK ACKER
(AC 23407)

Dranginis, West and Hennessy, Js.

Argued October 16, 2003—officially released January 20, 2004

*Timothy J. Sugrue,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, *Mary E. Card,* senior assistant state's attorney, and *Robin S. Schwartz,* former deputy assistant state's attorney, for the appellant (state).

*Michael T. Meehan,* for the appellee (defendant).

*Opinion*

DRANGINIS, J. The dispositive issue in this appeal is whether, in a prosecution under General Statutes § 22-363,[1] also known as our "nuisance dog" statute, the state must prove the identity of the specific dog or dogs causing the nuisance. We hold that it does not and, accordingly, reverse the judgments of the trial court.[2]

---

[1] General Statutes § 22-363 provides: "No person shall own or harbor a dog or dogs which is or are a nuisance by reason of vicious disposition or excessive barking or other disturbance, or, by such barking or other disturbance, is or are a source of annoyance to any sick person residing in the immediate vicinity. Violation of any provision of this section shall be an infraction for the first offense and such person shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both for each subsequent offense and the court or judge may make such order concerning the restraint or disposal of such dog or dogs as may be deemed necessary."

[2] The trial court granted the state's motion to appeal pursuant to General Statutes § 54-96.

The court found the following facts. The defendant, Frederick Acker, is the operator of a commercial kennel known as the Animal Adoption Network, Inc. The kennel is located in a residential neighborhood in Monroe, is licensed to board fifty dogs and has harbored up to thirty dogs at various times. The defendant lives in a house on the property and supervises the daily operation of the kennel.

From 1999 to 2001, more than 130 complaints were lodged against the kennel for excessive dog barking. The state charged the defendant with nineteen separate counts of nuisance. In July, 2002, the defendant filed a motion to dismiss the charge in Docket Number CR 171445, which the parties agreed would control the disposition of the other files. On August 15, 2002, the court granted the defendant's motion to dismiss on the ground that the state did not have sufficient evidence to prove which specific dog or dogs had engaged in excessive barking. This appeal followed.

"Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Doe* v. *Rapoport*, 80 Conn. App. 111, 119, 833 A.2d 926 (2003).

"A statute is enacted as a whole and must be read as a whole rather than as separate parts or sections. . . . Similarly, when the court engages in statutory analysis, it consider[s] the statute as a whole . . . [and reconciles] its . . . parts . . . to render a reasonable

overall interpretation." (Citation omitted; internal quotation marks omitted.) *Esposito* v. *Waldbaum's, Inc.*, 78 Conn. App. 472, 478, 827 A.2d 747 (2003).

In interpreting § 22-363, we start by examining the language of the statute, which provides in relevant part that "[n]o *person* shall own or harbor a dog or dogs which is or are a nuisance by reason of . . . excessive barking . . . [or] is or are a source of annoyance to any sick person residing in the immediate vicinity. . . ." (Emphasis added.) The first sentence of the statute, by its terms, prohibits human conduct, that is, the owning or harboring of a nuisance dog or dogs. It confirms the common-law recognition that dogs that are not properly controlled by their owners or keepers can be a nuisance. See *Herbert* v. *Smyth*, 155 Conn. 78, 81, 230 A.2d 235 (1967).

By utilizing the ancient grammar school exercise of diagramming a sentence, one must conclude that the word "person" is the subject of the sentence, and that the words "own" and "harbor" are the verbs. The words "dog" or "dogs" are the direct object of the verbs, and the phrase, "which is or are a nuisance by reason of . . . excessive barking," is a restrictive clause modifying the direct object, that is, which dogs may not be owned or harbored, i.e., dogs that are a nuisance because they bark excessively. The sanction of restraining or disposing pertains only to a dog or to dogs that are a nuisance due to excessive barking, as required by *Scudder* v. *Greenwich*, 127 Conn. 71, 14 A.2d 728 (1940).[3] The stat-

---

[3] The trial court relied on *Scudder* v. *Greenwich*, supra, 127 Conn. 71, to find that the statute required the defendant to identify the specific dog or dogs that were barking. We conclude that *Scudder* is instructive in preventing the arbitrary seizure and disposal of a dog or dogs, but that it does not impose a requirement on the state to identify the offending dog or dogs to prove a violation of General Statutes § 22-363. *Scudder* is distinguishable both procedurally and substantively from this matter. In *Scudder*, after a hearing to resolve complaints lodged against the plaintiffs' licensed kennel, the town selectmen ordered that the kennel be limited to harboring only ten dogs older than three months. The trial court enjoined the enforcement

ute recognizes the right of neighbors to the peaceful enjoyment of their property by prohibiting a person from owning or harboring a dog or dogs that bark excessively. The statute, however, may not be enforced to interfere with the property rights of a dog owner with respect to a kennel of properly licensed dogs. Id., 74.

The statute requires that we distinguish between dogs that bark and dogs that bark so much that they become a nuisance. It does not mean that the offending dog must be identified as Fido, Fifi or Filly.[4] To require the identification of a dog by name, license tag number or any other method of specific identification would render the statute unenforceable in instances such as this. We will not presume that the legislature enacts meaningless legislation, nor will we construe a statute in such a manner to render it meaningless. See *State* v. *Gibbs*, 254 Conn. 578, 602–603, 758 A.2d 327 (2000). For example, an indoor kennel or one surrounded by vegetation would make it impossible to see the dogs, much less identify the offending dogs. Enforcement of the statute would be rendered impossible if we were to construe the statute to require the specific identification of the nuisance dog or dogs.

The state argues that the defendant improperly relied on the legislative history of § 22-363 to support his contention that in any prosecution pursuant to the statute, the state should identify the specific dog or dogs causing

of the order because the numerical limit was arbitrary and exceeded the selectmen's statutory authority. Id., 73. Our Supreme Court upheld the ruling of the trial court, finding that "the order, under the statute, must concern a specific dog or dogs is the only reasonable conclusion." Id., 74. It left to the complainants, however, the option to redress their claim of nuisance under the common law.

[4] See *Commonwealth* v. *Ferreri*, 30 Mass. App. 966, 968, 572 N.E.2d 585 (1991), a similar case, in which the court stated: "It was not incumbent upon the Commonwealth to show that the dogs in the defendant's possession on the dates of the complaints were identical in being and number to the dogs which were the subject of the removal order."

a nuisance. After examining the legislative history, we agree with the state.

Section 22-363 was enacted in 1925 and was amended, most notably for our analysis, in 1953[5] and 1969. The 1953 amendment added the requirement that all offending dogs be specifically identified, but created an exemption to that requirement for kennels. Following a minor change in 1957, the statute underwent a major revision in 1969, resulting essentially in the current version of § 22-363. Among other things, the legislature deleted the specificity requirement, thus making the exemption for kennels unnecessary. Because the legislative history is silent as to the legislature's intent concerning those deletions, the defendants cannot rely on it to support a contrary interpretation. See *Spears* v. *Garcia*, 263 Conn. 22, 29, 818 A.2d 37 (2003).

Accordingly, the defendant's "[r]eliance on [the] legislative silence is misplaced. It is a basic tenet of statu-

---

[5] General Statutes (1953 Rev.) § 1849d provides: "If any person makes complaint in writing to the selectmen of a town, a borough warden or the chief of police of a city that any dog or dogs owned or harbored within such town, borough or city is or are a nuisance by reason of vicious disposition or excessive barking or other disturbance, or that any such dog or dogs, by such barking or other disturbance, is or are a source of annoyance to any sick person residing in the immediate vicinity, such selectmen, borough warden or chief of police shall investigate such complaint and may make such order concerning the restraint or disposal of such dog or dogs as may be deemed necessary. Any person owning or harboring such dog or dogs who fails to comply with such order shall be fined not more than twenty-five dollars or imprisoned not more than thirty days or both, and the dog warden having jurisdiction may, after notice to the owner, capture and confine or kill such dog or dogs or return it or them to its or their owner or harborer, as may be directed by such selectmen, borough warden or chief of police. *This section shall apply only with respect to a dog or to dogs individually and specifically identified in such complaint or order, provided such requirement of identification shall not apply in the case of any kennel when, on complaint, notice and hearing, such selectmen, borough warden or chief of police finds that such identification cannot be had and that the public health and safety is endangered by reason of the maintenance of such kennel.*" (Emphasis added.)

tory construction that we rely on the intent of the legislature as that intent has been expressed. . . . Indeed, to rely on the absence of legislative history . . . would turn the process of statutory construction on its head. More importantly, we would be exceeding our constitutional limitations by infringing on the prerogative of the legislature to set public policy through its statutory enactments." (Citations omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 79, 836 A.2d 224 (2003).

The judgments are reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.