******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARIA DIAZ *v.* MANCHESTER MEMORIAL HOSPITAL
(AC 37204)

DiPentima, C. J., and Sheldon and Prescott, Js.

*Argued October 22—officially released December 15, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Wiese, J.)

*Megan Piltz*, with whom, on the brief, was *Vincent F. Sabatini*, for the appellant (plaintiff).

*Michael D. Neubert*, with whom, on the brief, were *Gretchen G. Randall* and *Corey S. Fitzgerald*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Maria Diaz, appeals from the judgment rendered by the trial court in favor of the defendant, Manchester Memorial Hospital, on her premises liability claim. On appeal, the plaintiff claims that the court erroneously found that the defendant did not have constructive notice of an unsafe condition on its premises.[1] We affirm the judgment of the trial court.

The memorandum of decision of the court sets forth the following relevant facts. On the evening of January 18, 2011, the plaintiff slipped and fell on a well illuminated sidewalk leading to the entrance of the defendant's emergency department in Manchester. Earlier that evening, the plaintiff had driven a sick friend to the defendant's emergency department. The plaintiff dropped off her friend at the emergency department's entrance and then drove her car to the nearby parking area. After parking her car, the plaintiff elected to use the sidewalk rather than "[walk] directly from the parking area to the [emergency department] entrance. . . . As [the plaintiff] approached the [elevated] sidewalk, she noticed that there was no snow on it, but it was shiny in appearance. . . . As she proceeded to walk on the sidewalk, she slipped and fell backward hitting her head."

The court made detailed findings as to the defendant's efforts to keep the premises clear of snow and ice. The weather throughout the day of the accident was a "mix of snow, freezing rain, and rain." Due to the inclement weather, the snow removal service company retained by the defendant spent nearly eight hours, beginning at 2 a.m. on January 18, clearing parking areas and sidewalks on the defendant's grounds. In addition to this work, the snow removal service company had pretreated parking areas, driveways, sidewalks, and entrances, including the emergency department's entrance, with calcium magnesium acetate, which is "highly effective for pretreating and deicing surfaces."

As a general practice, the defendant also relied on its own staff for snow and ice removal. Members of the engineering department conducted two inspections per day of the defendant's grounds: (1) the first inspection started at the beginning of the first shift at 6 a.m.; and (2) the second inspection started at the beginning of the second shift at 3 p.m. As required, the engineering department staff would remove snow and treat areas with calcium magnesium acetate. On the day of the accident, records kept by the engineering department indicated that staff members removed snow and treated areas of the defendant's grounds with calcium magnesium acetate at various times throughout the day. In the process of removing snow and deicing, the staff members "follow[ed] a pattern of work which would

take them on a route around the entire hospital site concentrating on entrances to the building, including the [emergency department] entrance."

The defendant's security staff also was involved in the snow and ice removal procedures. On the day of the accident, the defendant assigned four security employees to the 4 p.m. to midnight shift. As part of their duties, the security staff would "[perform] rounds or inspections of the interior and exterior portions of the premises." Thus, "[t]he exterior premises would be inspected four to five times by security staff." If the situation required it, the security staff would address "slippery conditions identified during these inspections." Moreover, the security staff had the "ability to direct the [defendant's] engineering department to take remedial measures."

The bench trial began on December 17, 2013, and lasted two days. On April 10, 2014, the court rendered judgment in favor of the defendant. Specifically, the court found that the defendant had no actual or constructive notice of the presence of ice on the sidewalk, and, as a result, it "did not breach its duty to inspect and maintain the sidewalk to render it reasonably safe." Accordingly, the court concluded that the plaintiff "failed to sustain her burden of proof in [her] premises liability claim." This appeal followed.[2] Additional facts will be set forth as necessary.

The dispositive issue in this appeal is whether the court properly found that the defendant did not have constructive notice of the presence of ice on the sidewalk.[3] The plaintiff argues that the court "completely ignored the legal principle of constructive notice." In support of her claim on appeal, the plaintiff points to the dearth of discussion of constructive notice in the analysis section of the court's memorandum of decision. The defendant, however, asserts that the court's finding was supported by the evidence presented at trial. We agree with the defendant.

The well established standard of review applicable to this claim guides our analysis. "To the extent that the defendant challenges the trial court's factual findings, we review such claims under our clearly erroneous standard of review. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 858, 905 A.2d 70 (2006).

When the court is the finder of fact, "inference[es] of fact [are] not reversible unless the [inferences were] arrived at unreasonably. . . . We note as well that [t]riers of fact must often rely on circumstantial evidence

and draw inferences from it. . . . Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Moreover, it is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed." (Emphasis omitted; internal quotation marks omitted.) *Palkimas* v. *Fernandez*, 159 Conn. App. 129, 133–34,     A.3d     (2015).

Applying the general principles of premises liability[4] and guided by the applicable standard of review, we consider the facts of this case. It is undisputed that the plaintiff was a business invitee so that the defendant had a duty to keep its premises in a reasonably safe condition. See *Riccio* v. *Harbour Village Condominium Assn, Inc.*, 281 Conn. 160, 163, 914 A.2d 529 (2007). "Nevertheless, [f]or [a] plaintiff to recover for the breach of a duty owed to [her] as [a business] invitee, it [is] incumbent upon [her] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [her injury] or constructive notice of it. . . . In the absence of allegations and proof of any facts that would give rise to an enhanced duty . . . [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers. . . . Accordingly, business owners do not breach their duty to invitees by failing to remedy a danger unless they had actual or constructive notice of that danger." (Citation omitted; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116–17, 49 A.3d 951 (2012); see also *Drible* v. *Village Improvement Co.*, 123 Conn. 20, 23, 192 A. 308 (1937) (property owner is not insurer of invitee's safety).

"The controlling question in deciding whether the [defendant] had constructive notice of the defective condition is whether the condition existed for such a length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it. . . . What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case." (Citation omitted; internal quotation marks omitted.) *Considine* v. *Waterbury*, supra, 279 Conn. 870; see *Congdon* v. *Norwich*, 37 Conn. 414, 419 (1870) ("[a]ccumulations of snow and ice [which] may produce such a condition of the road as to cause it to be dangerous and defective" is question of fact).[5]

The crux of the plaintiff's argument is that she presented circumstantial evidence that the court failed to

examine. She points to various pieces of evidence to support her claim that the defendant had constructive notice of the presence of ice on the sidewalk. First, the plaintiff notes that the president of the snow removal service company testified that the company had sent the defendant a winter advisory e-mail warning of the expected weather conditions throughout the day of January 18, 2011. She also alludes to his testimony that a representative of the defendant excused the snow removal service company at approximately 9:38 a.m. on that day. Because the defendant was aware of the weather conditions and it allowed the snow removal service company to depart, the plaintiff argues that there was circumstantial evidence from which it could be inferred that the defendant had constructive notice of the "hazardous icy conditions."

Next, the plaintiff argues that the court should have determined on the basis of the testimony of her expert witness that the defendant had constructive notice of the unsafe condition of the sidewalk. Gilbert E. Nichols, a senior engineer employed by Forensic Engineering, testified on direct examination to consulting weather reports, reviewing imagery and photographs of the hospital, and reading the plaintiff's deposition testimony. He concluded that because the emergency department's entrance faced north, it caused a shadow to form on the sidewalk, which made the sidewalk "substantially more prone" to the formation of ice. On cross-examination, however, Nichols acknowledged that he did not have any information as to when the sidewalk was treated with a deicer. The plaintiff, nonetheless, argues that because the defendant excused the snow removal service company and Nichols testified that the emergency department's entrance was "substantially more prone" to the formation of ice, the defendant "knew it was [its] duty to check for refreeze throughout the remainder of the day."[6]

Finally, the plaintiff directs our attention to the testimony of the defendant's director of the engineering department and the defendant's second shift security sergeant supervisor to support her claim that the defendant had constructive notice of the ice on the sidewalk. The director of the engineering department acknowledged that the defendant occasionally received complaints from visitors concerning icy conditions. The second shift security sergeant supervisor testified that visiting hours ended at 8 p.m. The plaintiff contends that because of the previous complaints and the increased traffic at the emergency department's entrance at around 8 p.m., the defendant's employees should have discovered and remedied the icy condition that caused the plaintiff to fall.

This argument fails and, in fact, undermines her position because, in making it, the plaintiff concedes that there was evidence to support the court's finding,

which, in turn, leaves us with the definite and firm conviction that no mistake has been made. See *Considine* v. *Waterbury*, supra, 279 Conn. 858 ("[a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made" [internal quotation marks omitted]). The record demonstrates that the court, as the fact finder, had various sources of evidence to support its finding that the defendant did not have constructive notice of the icy sidewalk because the plaintiff failed to prove for how long the ice existed prior to her fall. It was well within the province of the court to rely on the evidence presented by both parties and to draw inferences from it, including testimonial and photographic evidence, as well as weather reports. See *Palkimas* v. *Fernandez*, supra, 159 Conn. App. 133. It bears noting that "[t]he sifting and weighing of evidence is peculiarly the function of the trier [of fact]." (Internal quotation marks omitted.) *Heritage Square, LLC* v. *Eoanou*, 61 Conn. App. 329, 333, 764 A.2d 199 (2001). Thus, the court reasonably found that although ice caused the plaintiff to slip, the defendant did not have constructive notice because "[i]t [was] not known for what period of time the ice existed prior to her fall."

Notwithstanding the plaintiff's contention that the court "failed to apply the legal principle of constructive notice to the evidence presented at trial," we are "entitled to presume that the trial court acted properly and considered all the evidence." (Internal quotation marks omitted.) *Doe* v. *Rapoport*, 80 Conn. App. 111, 116, 833 A.2d 926 (2003). Therefore, we do not "duplicate the trial court's weighing process [of the evidence], but rather . . . [we] determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . Thus, this court's review is limited to whether the trial court's conclusion was reasonable." (Internal quotation marks omitted.) Id. Accordingly, we defer to the court's finding that the defendant did not have constructive notice of the icy sidewalk because it was supported by the evidence.

Ultimately, what underlies the plaintiff's claim is dissatisfaction with the extent of analysis on the issue of constructive notice. Specifically, she claims that the court "never actually addressed whether [the defendant] had constructive notice" because the court, in the analysis section of its memorandum of decision, commented only once on the issue. This dissatisfaction is not a valid basis for reversing the court's decision. "The controlling question in deciding whether the [defendant] had constructive notice of the defective condition is whether the condition existed for such a

length of time that the [defendant] should, in the exercise of reasonable care, have discovered it in time to remedy it. . . . What constitutes a reasonable length of time is largely *a question of fact* to be determined in the light of the particular circumstances of a case." (Citation omitted; emphasis added; internal quotation marks omitted.) *Considine* v. *Waterbury*, supra, 279 Conn. 870. Here, the court made findings of fact necessary for a determination of constructive notice: "In applying the applicable law to the facts, the court finds that Diaz has failed in her burden to prove that the hospital breached its duty to maintain the sidewalk in a reasonably safe condition at the time of her fall on January 18, 2011. The hospital through its maintenance work and inspections, exercised reasonable care in an effort to identify and treat any icy conditions. The hospital had no actual notice of ice on the sidewalk at the time and place of Diaz' fall. It is not known for what period of time the ice existed prior to her fall. The hospital was unable, nor did it have the duty, to warn Diaz of icy conditions for which the hospital had *neither actual* [*nor*] *constructive notice*. Further, Diaz had actual notice of the presence of ice and chose to proceed to move forward until she fell backward. Accordingly, the hospital did not breach its duty to inspect and maintain the sidewalk to render it reasonably safe." (Emphasis added.) If the plaintiff was dissatisfied with the court's analysis of the constructive notice issue, the onus was on her to seek an articulation[7] of the court's decision because this court "cannot speculate on what predicate facts the court found to make its conclusion." *Martin* v. *Stop & Shop Supermarket Cos.*, 70 Conn. App. 250, 252, 796 A.2d 1277 (2002).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also claims on appeal that the court erroneously rendered judgment in favor of the defendant because she proved all the elements of a negligence claim. Because our resolution of the plaintiff's first claim of constructive notice is dispositive of her second claim, we do not reach it.

[2] In its appellate brief, the defendant presented two alternative bases for affirming the judgment of the court. First, the defendant argued that the ongoing storm doctrine precluded it from owing the plaintiff a duty at the time of the accident. Second, the defendant claimed that the plaintiff was barred from recovery due to her alleged contributory negligence. Because we affirm the court's judgment, we do not address these issues.

[3] We note that the court also found that the defendant did not have actual notice of the presence of ice on the sidewalk. The plaintiff does not challenge this finding on appeal.

[4] We note that a premises liability claim is a negligence cause of action. See *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 560, 707 A.2d 15 (1998). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) Id., 566.

[5] Oral argument of this appeal took place at the Litchfield Law School, which was founded in 1774 by Tapping Reeve, former Chief Justice of the Connecticut Supreme Court. It seems particularly fitting to cite relevant case law written by an alumnus of the law school, Justice Origen Storrs Seymour. See Litchfield Historical Society, "Origen Storrs Seymour," (2010), available at http://www.litchfieldhistoricalsociety.org/ledger/students/2275 (last visited December 2, 2015) (copy contained in the file of this case in the Appellate Court clerk's office).

[6] We note that the court's memorandum of decision does not address Nichols' testimony. The court's omission, however, does not indicate error because "[n]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Morgan* v. *Hill*, 139 Conn. 159, 161, 90 A.2d 641 (1952). As a reviewing court, we restrict "our function . . . to [determine] whether the facts set forth in the memorandum of decision are supported by the evidence or whether the facts as found are clearly erroneous in light of the evidence and the record as a whole." *Branigan* v. *Cohen*, 3 Conn. App. 580, 581, 490 A.2d 1019 (1985). Our review of the record gives us confidence that the absence of Nichols' testimony in the court's memorandum of decision is of little consequence.

[7] "[T]he appellant bears the burden of providing an appellate court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of decision . . . [or] to clarify the legal basis of a ruling." (Internal quotation marks omitted.) *East Windsor* v. *East Windsor Housing, Ltd.*, *LLC*, 150 Conn. App. 268, 278 n.10, 92 A.3d 955 (2014); see Practice Book §§ 61-10 and 66-5.